2011 OK 83

**CITY OF TULSA; and Kathy Taylor, Mayor of the City of Tulsa, Plaintiffs/Appellees,**

v.

**BANK OF OKLAHOMA, N.A., Defendant,**

v.

**Bank of Oklahoma, N.A.; Marilyn Bledsoe; Robert P. Sutton; Cheryl L. Sutton; Cynthia L. Sutton; Nancy Davis; Michael E. Staggs; Regina A. Staggs; Roberta L. Davis; Douglas W. McLain; Michael K. Ashley; Laura Mantooth; and Arthur Adams, Defendants/Appellants.**

No. 109,449.

Supreme Court of Oklahoma.

Oct. 11, 2011.

Rehearing Denied June 11, 2012.

Anthony P. Sutton, Marlin Ray Davis, Sutton, Davis & Staggs, P.A., Tulsa, Oklahoma, for Defendants/Appellants.

Adam Keith Marshall, Cori D. Powell, Robert B. Sartin, Barrow & Grimm, P.C., Tulsa, Oklahoma, for Plaintiffs/Appellees Qui Tam Taxpayers.

Frederic Griffin Dorwart, Michael J. Medina, Tulsa, Oklahoma, for Defendant.

COMBS, J.

## PROCEDURAL AND FACTUAL BACKGROUND

¶ 1 On November 30, 2000, the City Council of Tulsa decided to encourage the initiation of new direct nonstop airline service to the business centers of the East and West coasts, and voted to approve a Memorandum of Understanding between the Tulsa Industrial Authority (TIA) and the City of Tulsa which would convey to the TIA certain real property known as Air Force Plant Number 3 (Property). The purpose of the transfer was to allow TIA to mortgage the Property to the Bank of Oklahoma (BOK) in support of a non-recourse loan by the Bank to TIA so that TIA could, in turn, make a $30,000,000.00 aggregate loan (Great Plains Loan) to Great Plains Airlines, Inc. (Great Plains). This transfer was to allow the Tulsa Airports Improvement Trust (TAIT) to enter into a Support Agreement, pursuant to which TIA, in the event of a default would have the option of selling the Property to TAIT which would be done by direction of the BOK. Upon exercise of such option, the TIA would sell, transfer and convey the property to TAIT, to satisfy the outstanding loan balance.

¶ 2 This transaction contemplated by the City of Tulsa Memorandum and approved by the City Council, the Board of Trustees of TAIT, and the Board of Trustees of TIA was consummated and publicly announced on December 21, 2000. The City Council approved a Quit Claim Deed on December 4, 2000, from the City of Tulsa to TIA, recorded on December 27, 2000, in the Tulsa County Land Records. BOK made a loan of $30,000,000 to TIA, TIA made the Great Plains Loan to Great Plains, and TIA assigned the loan (without recourse) to the Bank. TIA mortgaged the Property to BOK to secure BOK's loan to TIA but did not file

the mortgage in the Land Records of Tulsa County, Oklahoma. TIA, TAIT and BOK entered into the Support Agreement on December 21, 2000, pursuant to which TIA was granted the Default Remedies in the event Great Plains failed to achieve certain business development milestones or defaulted on the Great Plains loan. TIA irrevocably appointed BOK to act as its attorney-in-fact to enforce the promises made by TAIT in the Support Agreement.

¶ 3 Great Plains failed to achieve its business development milestones and subsequently, on or about March 21, 2004, defaulted under the terms of the Great Plains Loan in accordance with the terms of the Support Agreement leaving a balance of approximately seven million dollars owed to the Bank. On or about June 22, 2004, BOK declared trigger events, as defined by the Support Agreement which would require TAIT to purchase the mortgaged property, were actionable. Thereafter, the Federal Aviation Administration (FAA) advised TAIT that TAIT should not use any of TAIT's funds in violation of the FAA Revenue Use Policy (Policy and Procedures for the Use of Airport Revenue, Federal Register February 16, 1999, at 7696, and following, "Revenue Use Policy"). TAIT asserted that all TAIT funds were Airport Revenue per the FAA Revenue Use Policy and refused to perform its obligation, under the Support Agreement, to purchase the Property and the Great Plains Loan.

¶ 4 As a result of TAIT not purchasing the property and the Great Plains Loan, TIA, by and through its attorney-in-fact, Bank brought suit against TAIT and its former attorney, J. Richard Studenny, and Studenny and Associates, a Professional Corporation (Studenny) in an action styled *Tulsa Industrial Authority v. Tulsa Airports Improvement Trust, City of Tulsa, J. Richard Studenny and Studenny and Associates*, in the district court of Tulsa County, Oklahoma, in case number CJ–2004–06124. TAIT responded to the lawsuit and alleged the Support Agreement was unlawful and an unenforceable contract because TAIT could not purchase the Great Plains Loan and Property by reason that all of TAIT's funds were

airport revenues and such purchases would violate the FAA Revenue Use Policy.

¶ 5 On January 5, 2007, the district court entered an Order determining certain TAIT assets were not airport revenues as alleged by TAIT. Subsequent thereto, the parties entered into an Interim Settlement Agreement dated February 26, 2007, whereby the parties agreed to make a cooperative effort to determine the extent to which TAIT had revenues that were not considered airport revenues subject to the FAA Revenue Use Policy or FAA grant restrictions which would assist the parties in attempting to reach a settlement of the lawsuit. During the course of its investigation, BOK identified additional revenues and assets that may not be airport revenues subject to the restriction imposed by the FAA Revenue Use Policy or FAA grant restrictions (Non–Restricted Assets). However, these Non–Restricted Assets are, in fact, airport revenues (as determined by the FAA) and, if used to satisfy the obligation to the bank, TAIT could be subject to severe FAA penalties which would result in serious consequences to TAIT and Airport operations. During the course of this investigation, in 2008, BOK alleges it identified a claim against the City of Tulsa arising out of the facts and circumstances of the subject transaction.

¶ 6 In March of 2008, BOK provided to TAIT and the City of Tulsa a second amended petition BOK intended to file on TIA's behalf in the Lawsuit. This petition added the City of Tulsa as a defendant in the lawsuit, and alleged the City of Tulsa, through the actions of its employees and/or agents, had been unjustly enriched by the subject transaction. As of March 31, 2008, the balance due to BOK was the sum of $11,648,294.00. The City of Tulsa, TAIT and their legal counsel evaluated the legal merits of BOK's petition and specifically the BOK's claim against the City of Tulsa, the City of Tulsa's potential exposure to liability, the costs of defending the claim, as well as, the overall risk to the City of Tulsa and/or airport if an adverse judgment for the full amount owed to BOK was entered against the City of Tulsa or TAIT.

¶ 7 On June 25, 2008, TIA filed the amended petition as a Second Amended Petition which added the City of Tulsa as a defendant in the lawsuit. The Second Amended Petition was properly served to the City of Tulsa. The City denied TIA's allegations in its Answer to the Second Amended Petition filed June 25, 2008, however, the City sought settlement of the lawsuit because it determined the claim asserted by TIA/BOK was a potential colorable claim exposing the City to a judgment in excess of $11,648,294.00, and significant legal fees in defending the lawsuit.

¶ 8 On June 26, 2008, (three days after filing their answer) the City, TAIT, TIA and BOK executed a Settlement Agreement which provided the City of Tulsa would pay BOK $7,100,000.00 to settle the lawsuit. The Settlement Agreement provided, in the event the City of Tulsa received a Qui Tam Demand pursuant to 62 O.S.2001, § 372 et. seq., the City of Tulsa would file a petition seeking a judicial declaration that its actions executing the Settlement Agreement and transferring the Settlement Payment were authorized under Oklahoma law. Additionally, pursuant to the terms of the Settlement Agreement, if the trial court determined the City of Tulsa's actions were not authorized under Oklahoma law, BOK was required to refund the entire Settlement Payment and the parties would proceed with the lawsuit.

¶ 9 On or about July 8, 2008, the City of Tulsa received a Qui Tam Demand from the Taxpayers asserting that the Settlement Agreement and/or Settlement Payment was not authorized by Oklahoma Law. The Taxpayers asserted the City of Tulsa had no legal obligation, and will never have the legal obligation, to pay the underlying claim in the lawsuit, and that the Taxpayers of the City of Tulsa will be significantly prejudiced if corrective action was not taken to reverse the course. At the time the City received the Taxpayers' Qui Tam Demand, the City of Tulsa had not made the Settlement Payment.

¶ 10 On July 14, 2008, and July 15, 2008, the City received what Taxpayers referred to as Supplements to Taxpayers' Qui Tam Demand from Taxpayers' counsel. On July 17, 2008, the City received a letter from Taxpayers' counsel which added two additional Taxpayers. On August 4, 2008, the City transferred $7.1 million to BOK pursuant to the Settlement Agreement. On August 6, 2008, the City received another letter from the Taxpayers, dated July 30, 2008, which repeated the Taxpayers' prior demands.

¶ 11 The City of Tulsa and Kathy Taylor, Mayor of the City of Tulsa, filed a Declaratory Judgment Action against the Bank of Oklahoma and multiple individual defendants (Taxpayers) on July 14, 2008. Plaintiffs filed an Amended Petition for Declaratory Judgment on July 22, 2008. The Defendant Taxpayers filed an Answer, Cross–Claim, Counter–Claim, and a Third–Party–Petition on August 5, 2008. Plaintiffs answered Defendant Taxpayers' claims on August 18, 2008. Defendant Bank of Oklahoma answered Plaintiffs' petition and Defendant Taxpayers' claims on August 25, 2008. Prior to the August 10, 2010, hearing on the Motions for Summary Judgment at issue, the matter was fully litigated with numerous trial court and appellate court proceedings. On October 3, 2008, the City filed a Motion for Partial Summary Adjudication against Taxpayers. This Motion of Partial Summary Adjudication was granted on February 26, 2009, and a journal entry memorializing the Court's order was settled on June 12, 2009.

¶ 12 As part of the order, the Court made Findings of Fact and Conclusion of law that were specifically incorporated and made part of the trial court's final order. The trial court ruled as to the limited issue presented in the Motion for Partial Summary Judgment, the effect of 62 O.S.2001, § 373, and how it pertained to the facts of the case. The trial court determined the pertinent facts to be that, on June 26, 2008, the City, the Tulsa Airports Improvement Trust, the Tulsa Industrial Authority and BOK executed a Settlement Agreement, which provided that the City would pay BOK $7,100,000.00 million to settle the lawsuit filed in *Tulsa Industrial Authority v. Tulsa Airports Improvement Trust, et al. Id.*

¶ 13 The trial court concluded, pursuant to 62 O.S.2001, § 372, the Declaratory Judgment Action filed by the City and the Mayor of the City of Tulsa was a proper response to the Taxpayers' Qui Tam Demand. The trial

court further found the Taxpayers' had no right to recover a Qui Tam Penalty. On October 8, 2008, the trial court granted the City's Motion for Partial Summary Adjudication.

¶ 14 The City of Tulsa and Kathy Taylor, Mayor of the City of Tulsa, asked the trial court to determine, as a matter of law, the settlement agreement was a lawful contract executed by the City, and the settlement payment made pursuant to the settlement agreement was a lawful expenditure of public funds. The taxpayers asked the trial court to determine, as a matter of law, the Mayor lacked the legal authority to enter into the Settlement Agreement, and the payment of money to the Bank of Oklahoma pursuant to the settlement agreement was an illegal transfer of public funds made pursuant to an unlawful settlement agreement and a fraudulent judgment. The Taxpayers also argued the City did not pursue the Taxpayers' claim in good faith, and their Qui Tam status should be recognized.

¶ 15 In granting the City's motion for summary judgment, the trial court found, first the settlement agreement was a lawful settlement of a colorable claim against the City, and the settlement payment was a lawful expenditure of funds. Second, the City properly responded to the taxpayers' Qui Tam demands by initiating the declaratory judgment action and presenting, in good faith, the Taxpayers' challenges to the Settlement Agreement and Settlement Payment. The trial court denied the Taxpayers' counter-

motion for summary judgment and denied the Taxpayers' request to reconsider the February 26, 2009, Order granting partial summary judgment.

¶ 16 Taxpayers filed this appeal and a motion to retain by the Supreme Court which was granted. Taxpayers' question six is dispositive of all issues in this case and reads [1]:

> 6. Is an unjust enrichment claim actionable against a municipality? If so, is compliance with GTCA required as a condition precedent to recovering on such a claim?

## STANDARD OF REVIEW

■■■ ¶ 17 This Court has previously identified, in a case similar to the one at Bar, the standard of review from a summary judgment in a Qui Tam action:

> Summary relief issues stand before us for de novo examination. All facts and inferences must be viewed in the light most favorable to the non-movant. Just as nisi prius courts are called upon to do so, so also appellate tribunals bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant. Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor.

1. The unaddressed questions are as follows:

   1. Must payment of a money judgment entered against a municipality, upon any theory, utilizing the sinking fund, comply with the Judgments Against Municipalities Act (JAMA) Okla. Stat. tit. 62, §§ 361–363?
   2. May a city circumvent the sinking fund statutory requirements that money judgments against the city be paid only from "sinking funds" (Okla. Stat. tit. 62, §§ 365.5 and 435) by "investing" in a money judgment against itself with city operating (non-sinking) funds pursuant to Okla. Stat. tit. 62, § 348.1?
   3. If municipalities can circumvent sinking fund statutes through Okla. Stat. tit. 62, § 348.1, and pay on asserted claims that are merely "plausible" and not those determined to be factually and legally owed, and the transfer not tested by compliance with the Governmental Tort Claims Act (GTCA) or JAMA, are

   citizens protected against the unlawful taxation disallowed by the Supreme Court in *Wood v. Phillips*, 1923 OK 668, 219 P. 646?
   4. Where the Bylaws of a municipality do not specifically address a mayor's express authority to enter into settlement agreements, does a strong mayoral form of government under Okla. Stat. tit. 11, §§ 11–101, 106 and 108 require city council approval in order to bind a municipality to a settlement agreement and judgment?
   5. Does Article X, §§ 14, 15, and 26 of the Oklahoma Constitution require a debt to be, in fact, owed by a municipality before an agreement to pay the claim is required or, as in the present case, need a claimant only present a "plausible" claim?
   7. Does the City's action violate binding precedence and render illusory the qui tam statutes?

*State ex rel. Fent v. State ex rel. Oklahoma Water Resources Board,* 2003 OK 29, ¶ 14, 66 P.3d 432, 440. The appellate standard of review of a trial court's grant of summary judgment is de novo. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, this Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Id.* All inferences and conclusions to be drawn from the evidentiary materials will be viewed in the light most favorable to the nonmoving party. *Id.* This Court will reverse the grant of summary judgment when it appears from the evidentiary materials that the material facts concerning issues raised in the case are conflicting or, if the material facts are disputed, reasonable persons in the exercise of fair and impartial judgment might reach a different conclusion from those facts. *Buck's Sporting Goods, Inc. of Tulsa v. First Nat'l Bank & Trust Co. of Tulsa,* 1994 OK 14, ¶ 11, 868 P.2d 693, 697–698. In a summary judgment review an appellate court has the same power as the trial court to resolve any disputed issues of law. *U.S. Mortgage v. Laubach,* 2003 OK 67, ¶ 31, 73 P.3d 887, 900. Questions three and six presented by the Qui Tam litigants form the basis of our decision in the instant matter.

¶ 18 In the present matter TAIT is public trust under 60 O.S.1991, §§ 176–180.3 created by Trust Indenture dated as of March 7, 1969, as amended, for the use and benefit of the City of Tulsa under the authority of and pursuant to the provisions of the Act and other applicable statutes of the State. 60 O.S.1991, § 179, Trustee–Agency of State–Liability for acts reads:

The trustee, or trustees, under such an instrument or will shall be an agency of the state and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created. No trustee or beneficiary shall be charged personally with any liability whatsoever by reason of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property; but any act, liability for any omission or obligation of a trustee or trustees, in the execution of such trust, or in the operation of the trust property, shall extend to the whole of the trust estate, or so much thereof as may be necessary to discharge such liability or obligation, and not otherwise.

This statute shows that the trustor, in this matter the City of Tulsa, can be responsible for "any act, liability for any omission or obligation of a trustee or trustees, in the execution of such trust." [2] This generally applies to governmental functions or proprietary functions of the city. Economic development is not such a function.[3]

### UNJUST ENRICHMENT

¶ 19 The City of Tulsa settled the instant claim on the basis of unjust enrichment. This Court has previously held "unjust enrichment arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss. One is not unjustly enriched, however, by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution." *McBride v. Bridges,* 1950 OK 25 ¶ 8, 215 P.2d 830, 832, 202 Okl. 508. Before a party will be entitled to recover for unjust enrichment, however, "there must be enrichment to another, coupled with a resulting injustice." *Teel v. Public Service Co. of Oklahoma,* 1985 OK 112, ¶ 23, 767 P.2d 391, 398 (superceded by statute on other grounds). Any enrichment to the City of Tulsa had long been lost as a result of the failure of Great Plains Airlines. Tulsa is not unjustly enriched, by retaining benefits involuntarily acquired, which law and equity give it absolutely without any obligation on its part to make restitution. An unjust enrich-

---

**2.** *McKosky v. Town of Talihina,* 1977 OK CIV APP 27, ¶¶ 13–14, 581 P.2d 482, 485–486, applied this Statute to the proprietary functions of a city. In the present matter economic development is not a proprietary function of the City of Tulsa and is inapplicable in the instant matter.

**3.** *Board of County Commissioners v. Warram,* 1955 OK 198, ¶ 45, 285 P.2d 1034, 1041, held that debt created by a public trust shall never become an obligation of the beneficiary.

ment claim is not a viable cause of action in the instant matter as the City of Tulsa was not unjustly enriched by a failed business venture. To find a valid unjust enrichment claim in such a matter would have a chilling effect on economic development.[4] Cities might not seek economic development in such actions if there is a chance of being sued for unjust enrichment should the economic enterprise fail for reasons outside the municipality's control. The City of Tulsa had no control over the FAA revenue determination.

¶ 20 Even if a cause of action for unjust enrichment existed the current claim is out-of-time. The limitation period for the underlying proposed unjust enrichment claim in the instant case is governed by 12 O.S. Supp.2002 § 95 which provides:

> Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, but not afterwards:
>
> . . .
>
> 3. Within two (2) years: An action for trespass upon real property; an action for taking, detaining, or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud.

In the present matter, Great Plain defaulted on its loans in 2004. BOK sued TAIT that same year. BOK knew it suffered an identifiable loss or injury on the non-recourse loans on July 22, 2004. Any cause of action against the City of Tulsa would have accrued from the date of the initial default. The City of Tulsa was not added as a defendant in the lawsuit until March 2008 when it was determined that TAIT's revenues could not be accessed without serious FAA penalties. BOK alleged it did not determine it had a plausible cause of action for unjust enrichment until it was determined it could not collect monies from TAIT. This occurred approximately four years after the initial lawsuit was filed.

¶ 21 This Court has previously held in *Samuel Roberts Noble Foundation, Inc. v. Vick*, 1992 OK 140 ¶ 22, 840 P.2d 619, 624, regarding the statute at hand that:

> ... The statute is, however, subject in certain instances to a "discovery rule." The discovery rule provides that the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury. (Citations omitted)

Furthermore, this Court again held in *Stephens v. General Motors Corp.* 1995 OK 114 ¶ 8, 905 P.2d 797, 799, that:

> According to 12 O.S. Supp.1993 § 95, an action must be commenced within the relevant period "after the cause of action shall have accrued" or it is barred. The statute of limitations begins to run when the cause of action accrues. A cause of action accrues when a litigant could first maintain an action to a successful conclusion. *Sherwood Forest No. 2 Corp. v. City of Norman*, 632 P.2d 368, 370 (Okl.1980); *Oklahoma Brick Corp. v. McCall*, 497 P.2d 215, 217 (Okl.1972). Additionally, this court has held "that for the purposes of 12 O.S. 1981 § 95 Third, a negligence claim accrues when any injury to the plaintiff, for which an action could proceed is certain and not merely speculative." *M.B.A. Constr., Inc. v. Roy J. Hannaford Co., Inc.*, 818 P.2d 469, 470 (Okl.1991).

In the present matter, BOK knew it suffered an identifiable loss or injury on July 22, 2004. It did not pursue any action on this non-recourse loan against the City of Tulsa until March of 2008, almost four years after it knew of its identifiable loss or injury. The Tulsa Airport Improvement Trust is an Oklahoma Public Trust and is an agency of the State of Oklahoma and a regularly constituted agency of its beneficiary, the City of Tulsa, Oklahoma. The land on which the mortgage was given (Air Force Plant 3) was quit-claimed by the City of Tulsa to TIA. The

---

4. For a review of Oklahoma law concerning economic development using public funds see, *Burkhardt v. City of Enid*, 1989 OK 45, 771 P.2d 608; *State ex rel. Brown v. City of Warr Acres*, 1997 OK 117, 946 P.2d 1140.

Support Agreement in the instant case required TAIT, not the City of Tulsa, to purchase the property in case of the triggering event. According to the support agreement, the loan was to be made to "promote the general public health, safety, and welfare of the City, including the economic benefits of expanding the tax base and providing employment opportunities . . ."

¶ 22 BOK was, at all times, fully aware this agreement was for the benefit of the City of Tulsa when it made its non-recourse loan. BOK could have, and should have, added the City of Tulsa as a defendant at the initiation of this lawsuit. The mere fact that TAIT being bound by FAA regulations was the event that caused BOK to consider adding the City of Tulsa as a defendant in this action is illusory. The discovery rule provides the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury. BOK knew of its injury on July 22, 2004, but did not add the City of Tulsa as a defendant until March of 2008. According to 12 O.S.Supp.2002, § 95, BOK had two years to add the City of Tulsa as a defendant in "an action for injury to the rights of another, not arising on contract," as the City of Tulsa was not a party to the Loan Agreement that bound the parties in the instant action. Therefore, the settlement agreement in the instant matter should be set aside as void.

## TAXPAYERS ARE NOT ENTITLED TO QUI TAM PENALTIES

■ ¶ 23 The taxpayers in the instant case are not entitled to recover any Qui Tam penalties as the City of Tulsa did not fail to respond to the Qui Tam action in the instant matter as required by 62 O.S. Supp.2008, § 372 which provides:

Every officer of the state and of any county, township, city, town or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the state or to such county, city, town or school district, in settlement of any claim or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such

county, city, town or school district, by any officer thereof, known to such officer to be fraudulent or void, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the state, county, city, town or school district affected, for triple the amount of all such sums of money so paid, and triple the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the state or such county, city, town or school district, or of any resident taxpayer thereof, pursuant to Section 373 of this title; provided, however, no action for personal liability shall lie against any such officer for a transaction approved in good-faith reliance on advice of legal counsel for the public entity authorizing the transaction or which has been submitted to a court of competent jurisdiction for determination of legality.

Furthermore 62 O.S. Supp.2000, § 373 provides:

Upon the refusal, failure, or neglect of the proper officers of the state or of any county, township, city, town, or school district, after written demand signed, verified and served upon them by ten resident taxpayers of the state or such county, township, city, town, or school district, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the state, or such county, township, city, town, or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers for the state or any such county, township, city, town, or school district, or for the penalty provided in the preceding section, any resident taxpayer of the state or such county, township, city, town, or school district affected by such payment or transfer after serving the no-

tice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the State, county, township, city, town, or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half (½) the amount of the money and one-half (½) the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section, shall be paid to such resident taxpayer as a reward. If all claims stated by the resident taxpayers in the written demand are determined in a court of competent jurisdiction to be frivolous, the resident taxpayers who signed such demand and who are parties to the lawsuit in which such claims are determined to be frivolous shall be jointly and severally liable for all reasonable attorney fees and court costs incurred by any public officer or officers or any other person alleged in such demand to have paid out, transferred, or received any money or property belonging to the state, or such county, township, city, town or school district in pursuance of any alleged unauthorized, unlawful, fraudulent, or void claim paid or contract or conveyance made, or attempted to be made, by such officer or officers.

¶ 24 In the present matter the City acted properly in protecting the rights of the Qui Tam petitioners by filing the underlying declaratory action. The officers of the City of Tulsa were acting under the guidance of legal counsel and properly submitted the settlement agreement to the District Court of Tulsa County for judicial determination of the legality of the settlement. This Court has recently addressed this same issue in *Tulsa Industrial Authority v. City of Tulsa* 2011 OK 57, ¶ 14, 270 P.3d 113 where we held:

> *In summary*, a *qui tam* taxpayer's § 373 right to intervene is based upon a public body's failure to seek recovery of the public funds issue as specified in § 373. A public body's right to prevent intervention of the qui tam taxpayer in its declaratory judgment proceeding is based upon its dili-

gent prosecution therein of the *qui tam* taxpayer's claim of illegality . . .

No request had been made as to possible frivolous claims and therefore we decline to address any possible issue as to attorney fees under 62 O.S. Supp.2000, § 373.

¶ 25 In the case at Bar, we find that the settlement of the unjust enrichment claim was untimely and unviable; however, the City of Tulsa properly responded to the Qui Tam action and therefore the Qui Tam applicants cannot recover any penalty. The Qui Tam taxpayers were included as parties in the instant matter and were allowed to brief and argue their standpoint to the district court. The City of Tulsa at no time prevented the Qui Tam parties from presenting their case, but rather added them as party-defendants to the declaratory action.

## CONCLUSION

¶ 26 In the present matter, the settlement was not based on a contract, but rather under the equitable theory of unjust enrichment to the City of Tulsa. The City of Tulsa, at all times, presented the settlement issues to the District Court of Tulsa County. The Judgments Against Municipalities Act does not apply. Therefore, the sinking funds requirement also does not apply. However, since we find the unjust enrichment claim to be unviable and the Statute of Limitations would bar the unjust enrichment claim against the City, we remand the instant matter back to the District Court of Tulsa County to direct the repayment of the settlement funds from BOK back to the City of Tulsa. As this finding disposes of the instant matter, we decline to address the other issues presented by the Qui Tam applicants.

**RULING OF TRIAL COURT REVERSED AND CAUSE REMANDED.**

¶ 27 CONCUR: TAYLOR, C.J., WATT, WINCHESTER, EDMONDSON, COMBS, JJ.

¶ 28 CONCUR IN PART; DISSENT IN PART: COLBERT, V.C.J., KAUGER (JOINS REIF, J.), GURICH (JOINS REIF, J.), JJ.

¶ 29 DISSENT: REIF (BY SEPARATE WRITING–WITH WHOM KAUGER AND GURICH, JJ., JOIN), J.

REIF, J., dissenting, with whom KAUGER and GURICH, JJ., join.

¶ 1 This case concerns a claim by the Bank of Oklahoma against the City of Tulsa that arose out of the Bank's financing of Great Plains airline service at the City's municipal airport. The controversy over this claim is whether the City of Tulsa had a sufficient stake in the financing of Great Plains that would justify the City's settlement of the Bank's claim. In my opinion, the undisputed **material** facts surrounding the financing arrangement disclose that the City had such a stake and the trial court properly granted summary judgment approving the settlement of Bank's claim.

¶ 2 Although not a party to the financing contracts, the City did transfer title to real property at the airport to the Tulsa Industrial Authority for the purpose of securing a loan from the Bank to finance Great Plains' service. As a contingency for repayment, the Tulsa Airport Improvement Trust agreed to purchase the collateral real property and Great Plains' loan from the Bank in the event of default by Great Plains. Great Plains eventually defaulted. The Airport Improvement Trust did not fulfill its purchase agreement because the Federal Aviation Administration advised the Trust it could not use "airport revenue" for such a purpose. Litigation then ensued with the Industrial Authority and Bank of Oklahoma aligned against the Airport Improvement Trust. The Bank would later conclude that the City had been "unjustly enriched" by the Bank's financing assistance to Great Plains and the failure of the Airport Improvement Trust to purchase the collateral property and outstanding loan. Regardless of the merit of the unjust enrichment aspect of the Bank's claim, the Bank nonetheless held a mortgage on the property the City provided to the Industrial Authority as collateral for the Bank's financial commitment to the Great Plains financing plan.

¶ 3 The City of Tulsa had a clear and substantial equitable interest in the collateral property to protect, despite having transferred legal title to the Industrial Authority. Preference to redeem the property from the Bank's mortgage, as well as the release of the mortgage itself, constituted valuable consideration for the City's settlement of Bank's claim. Such redemption and release returned the property as an asset for further development of the airport by the City and the Industrial Authority. Bringing complex litigation to an end was further consideration to support the settlement of Bank's claim. The decision to pursue such ends in the public interest is a matter that lies peculiarly within the governing judgment of the elected officials of the City of Tulsa. The remedy for taxpayers who disagree with the exercise of such judgment by their elected officials lies at the ballot box, not in the Courts.

¶ 4 I would affirm the summary judgment approving the settlement.