**HITCH ENTERPRISES, INC., David D. Duncan and Sagacity, Inc., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CIMAREX ENERGY CO. et al., Defendants.**

**No. CIV–11–13–W.**

United States District Court, W.D. Oklahoma.

March 20, 2012.

Jon K. Parsley, Jon K. Parsley PLLC, Guymon, OK, Rex A. Sharp, Gunderson Sharp & Walke LLP, Prairie Village, KS, for Plaintiffs.

Bradley Ward Welsh, Gable & Gotwals, Tulsa, OK, James D. Kilroy, Jessica E. Yates, Nathan K. Davis, Snell & Wilmer, Denver, CO, for Defendants.

## ORDER

LEE R. WEST, District Judge.

Plaintiff Hitch Enterprises, Inc. ("Hitch"), filed the petition (hereafter "complaint") in this action on December 6, 2010, in the District Court of Texas County, Oklahoma, on its own behalf and on behalf of all other persons similarly situated, and sought relief for alleged "underpayment or non-payment of royalties on natural gas and/or constituents of the gas stream produced from wells in Oklahoma through improper accounting methods...." Doc. 1–2 at 1, ¶ 1.

Hitch identified "Cimarex Energy Co. (including affiliated predecessors and suc-

cessors)," *id.* at 2, ¶ 6, as the named "defendant" and further asserted that the following shall collectively be known as "defendant" or "Cimarex" in this matter:

its affiliated predecessors, successors, and current and past employees, agents, representatives, attorneys, or others acting on its behalf and all those whose prior leasehold interests it has succeeded and for whom they are legally liable whether by merger, assignment, or otherwise....

*Id.* ¶ 7.

Hitch described itself as a "royalty owner in Oklahoma wells owned in part or operated by [d]efendant," *id.* at 1, ¶ 2, and in particular, the owner of "royalty interests in the Hitch JR 1–20 and the Hitch Trust 2–29 wells in Texas County, Oklahoma." *Id.* at 2, ¶ 5. Hitch alleged that the "[d]efendant owns a working interest in and pays royalty to ... [Hitch] on each of these [two] wells." *Id.* ¶ 6.

Cimarex removed the matter to this Court on January 5, 2011, and the matter came before the Court on Cimarex's Motion to Dismiss filed pursuant to Rules 8, 10 and 12(b)(6), F.R.Civ.P. In considering Cimarex's challenges to the complaint, the Court addressed only certain issues which it found dispositive of Cimarex's motion.

The Court first found that Hitch's complaint did not satisfy the requirements of Rule 10(a), F.R.Civ.P., which commands that "[e]very pleading must have a caption with [inter alia] ... a title ...," and further commands that "[t]he title ... must name all the parties...." Relying on *Murrah v. EOG Resources, Inc.,* 2011 WL 227652 (W.D.Okla. January 21, 2011), the Court held that "the use of th[e] generic phrase ['including predecessors and successors' in the caption] violate[d] Rule 10(a)," *id.* at *1. and dismissed the allegations in Hitch's complaint that referred to the unnamed "affiliated predecessors and successors." *See* Doc. 22 at 3.

Cimarex had also sought dismissal of Hitch's complaint under Rules 12(b)(6) and 8 to the extent that Hitch had sought to impose liability on Cimarex due to the actions of unidentified affiliated predecessors and successors or to impose liability on Cimarex due to its own actions. The Court found that Hitch's conclusory allegations that Cimarex may be liable because of the acts and/or omissions of an unidentified entity were insufficient under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Hitch had set forth no factual allegations in its complaint that would support the imposition of liability on Cimarex for the acts and/or omissions of any unidentified affiliated predecessor or successor, and Cimarex was therefore entitled to dismissal of those allegations in Hitch's complaint that attempted to hold Cimarex liable as the predecessor or successor of another entity. *See* Doc. 22 at 4.

Finally, the Court considered those allegations in the complaint that sought to impose liability on Cimarex due to Cimarex's own actions. Hitch's claims against Cimarex were grounded on the following conclusory allegation:

Hitch ... has ... royalty interests in the Hitch JR 1–20 and the Hitch Trust 2–29 wells ... [and] [d]efendant owns a working interest in and pays royalty to ... [Hitch] on each of these wells.

Doc. 1–2 at 2, ¶ 5.

The leases, *see* Docs. 10–1, 10–2, allegedly giving rise to Hitch's entitlement to royalties however did not reveal any connection between Cimarex and Hitch. Because " 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory,' " *Bryson v. Gon-*

*zales,* 534 F.3d 1282, 1286 (10th Cir.2008)(quotation and further citation omitted), the Court found upon review of the leases submitted by Cimarex and the allegations in the complaint that referred to them that Hitch had not advanced any factual allegations that would support for purposes of Rule 12(b)(6) a plausible contractual relationship between Cimarex as a lessee and Hitch as a lessor. Accordingly, because Hitch's complaint failed "to raise a right to relief above the speculative level," 550 U.S. at 555, 127 S.Ct. 1955 (citation and footnote omitted), the Court dismissed it without prejudice and granted Hitch the opportunity to amend the complaint in accordance with Rule 11, F.R.Civ.P., and *Twombly* and *Iqbal* "to frame a 'complaint with enough factual matter (taken as true) to suggest' that [it was] ... entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008)(quoting 550 U.S. at 556, 127 S.Ct. 1955).

Hitch amended its complaint against Cimarex, see Doc. 32, and joined as additional party plaintiffs, David D. Duncan, the owner of royalty interests in the Duncan Clarence 1–16 well in Custer County, Oklahoma, and Sagacity, Inc. ("Sagacity"), the owner of royalty interests in thirty-two (32) wells in Marshall County, Oklahoma.

In addition to Cimarex Energy Co. ("Cimarex Energy"), Hitch named as party defendants, Key Production Company, Inc. ("Key"), Gruy Petroleum Management Company (n/k/a Cimarex Energy of Colorado, Inc.) ("Gruy"), Prize Energy Resources, L.P. ("Prize") and Magnum Hunter Production Inc. ("Magnum Hunter").

Key is alleged to hold the lease and operate the Hitch JR 1–20 and the Hitch Trust JR 2–29 wells and to have contracted with Cimarex Energy to pay the royalty to Hitch on these wells.[1] Cimarex Energy is alleged to hold the lease and operate the Duncan Clarence 1–16 well and to pay the royalty on this well to Duncan.

Prize and/or Magnum Hunter is alleged to hold one or more of the thirty-two (32) leases in which Sagacity is involved. Gruy is alleged to operate one or more of these wells, and Prize, Magnum Hunter and Gruy are alleged to have contracted with Cimarex Energy to pay the royalty on these wells to Sagacity.

The matter now comes before the Court on the defendants' Motion to Dismiss First Amended Complaint filed pursuant to Rule 12(b)(6), *supra.* The plaintiffs have responded, and the defendants have filed a reply. Based upon the record, the Court makes its determination.

In *Twombly,* the United States Supreme Court set forth the standards that this Court must use in determining whether dismissal, as the defendants have requested, is warranted under Rule 12(b)(6). The Supreme Court held in accordance with Rule 8 that to withstand a motion to dismiss, a complaint[2] need not contain "heightened fact pleading of specifics," 550 U.S. at 570, 127 S.Ct. 1955, or "detailed factual allegations," *id.* at 555, 127 S.Ct. 1955 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." *id.* at 570, 127 S.Ct. 1955.

---

1. These allegations have been admitted. *See* Doc. 10–3.

2. "The [C]ourt's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is le-

gally sufficient to state a claim for which relief may be granted.' " *Swoboda v. Dubach,* 992 F.2d 286, 290 (10th Cir.1993)(quotation omitted)(emphasis deleted). That is to say, "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir.2010) (citation omitted).

**1256**

The United States Court of Appeals for the Tenth Circuit has stated that *Twombly* imposes a "burden ... on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that ... [it] is entitled to relief." *Robbins,* 519 F.3d at 1247 (quoting 550 U.S. at 556, 127 S.Ct. 1955). Thus, "[t]he allegations [in the first amended complaint] must be enough that, if assumed to be true, ... [the plaintiffs] plausibly (not just speculatively) ha[ve] a claim for relief [against the defendants]." *Id.* (footnote omitted).

The Court's task therefore at this stage is to determine whether "there are well-pleaded factual allegations," *Iqbal,* 129 S.Ct. at 1950, in the first amended complaint, and if so, the "[C]ourt should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (citations omitted). "[T]he *Twombly/Iqbal* standard recognizes that a plaintiff should have at least some relevant information to make the claims plausible on their face." *Khalik v. United Air Lines,* 671 F.3d 1188, 1193 (10th Cir.2012).

However, "'[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" *Id.* at 1191 (quoting *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir.2011)) (further citation omitted).

The defendants have first challenged Count I of the first amended complaint wherein the plaintiffs have complained that the defendants have breached the oil and gas leases.[3] In particular, the plaintiffs have alleged that they

> entered into written, fully executed, oil and gas leases with [d]efendants, and those leases include implied covenants requiring [d]efendants to place the gas and its constituent parts in "Marketable Condition" at [d]efendants' exclusive cost.

Doc. 32 at 24, ¶ 71.

The plaintiffs have further alleged that "[t]he leases also place upon [d]efendants the obligation to properly account for and pay royalty interest to royalty owners under the mutual benefit rule." *Id.* The plaintiffs have complained that while they have performed their obligations under the leases, the defendants have breached the foregoing implied covenants.

■ The defendants have asserted two arguments in support of their request for dismissal of Count I. The first argument, which the Court finds dispositive, is grounded on the defendants' contention that the plaintiffs have not described the relevant leases in, or attached copies of the leases to, their amended pleading. The defendants have posited that the Court is charged with "fix[ing] the rights and

**3.** Gruy has argued that it cannot be held liable on this claim because, as the plaintiffs have conceded, "it holds no Oklahoma leases." Doc. 32 at 5, ¶ 11. Gruy does however operate the thirty-two wells in which Sagacity holds a royalty interest, *see id.,* and it "operates all of the Oklahoma leases held by Prize

and Magnum Hunter." *Id.* All Gruy-operated "wells have the royalties paid by Cimarex Energy," *id.,* and in light of the plaintiffs' allegations regarding agency and alter ego, the Court finds at this stage that Gruy is not entitled to dismissal of the breach of lease claim based on this argument alone.

duties of the parties according to the leases and the implied covenants that go with them," *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203, 1205–06 (Okla.1998), and that the Court cannot perform this task in the absence of a description of the oil and gas leases or the submission of the same.

In *Chieftain Royalty Co. v. Dominion Oklahoma Texas Exploration & Production, Inc.*, No. CIV–11–344–R (W.D.Okla. July 14, 2011), the Honorable David R. Russell, United States District Judge for the Western District of Oklahoma, held

> that to state plausible claims for breach of oil and gas leases by breach of the duty to market implied therein under *Twombly, supra,* [p]laintiffs must identify or describe their individual leases in which [d]efendant ... is the lessee or successor lessee or attach copies thereof and describe the royalty terms thereof so as to raise the existence of leases between the individual [p]laintiffs and [d]efendant ... and alleged breach by [d]efendant of the implied duty to market and thus [p]laintiffs' right to relief beyond the speculative level.

*Id.* slip op. at 5 (citation omitted).

To prevail on a claim for breach of contract, a plaintiff must prove inter alia the existence of a contract between the parties. Mindful that *Twombly* and *Iqbal* prohibit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955), the Court finds based upon *Chieftain Royalty* that the allegations in the first amended complaint with regard to the identity of the leases that the defendants allegedly breached do not satisfy the pleadings requirements of *Twombly* and *Iqbal*.

Because the instant plaintiffs failed to "identify or describe their individual leases ... or attach copies thereof and describe the royalty terms there[in] so as to raise the existence of leases between the individual [p]laintiffs and [d]efendant[s]," *Chieftain Royalty*, slip op. at 5 (citation omitted), the Court finds the first amended complaint fails "to state plausible claims for breach of oil and gas leases by breach of the duty to market implied therein under *Twombly. supra.*" id., and that the defendants are therefore entitled to dismissal of Count I.[4]

■ The defendants have next challenged the plaintiffs' claim for unjust enrichment as set forth in Count II of the first amended complaint on the grounds that the plaintiffs as royalty owners cannot sue for unjust enrichment because their entitlement to royalty payments is dependent upon underlying oil and gas leases that expressly obligate the defendants to pay royalties and thus, the plaintiffs have an adequate remedy at law to recoup any damages they may have sustained.

The Oklahoma Supreme Court has described "unjust enrichment" as

> a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; i.e. the party has money in its hands that, in equity and good conscience, it should not be allowed to retain. Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment.

4. At this stage of the litigation, each named plaintiff must plead its own cause of action. Until issues of class certification are presented to, and addressed by, the Court under Rule 23, F.R.Civ.P., Hitch, Duncan and Sagacity are not representatives of any other parties. Thus, each plaintiff must meet its own procedural burden under Rule 12(b)(6) and the pleading standards of *Twombly* and *Iqbal*.

*Harvell v. Goodyear Tire and Rubber Co.,* 164 P.3d 1028, 1035 (Okla.2006)(footnotes omitted).

In an attempt to satisfy the pleading standards of *Twombly* and *Iqbal* in connection with this claim for relief, the plaintiffs have alleged in Count II that the "[d]efendants received the benefit of or retained monies due and owing to [p]laintiffs ...," Doc. 32 at 24, ¶ 76, and that the "[d]efendants were thereby able to use for their own purpose monies that in equity and good conscious, and as a matter of law, belonged to royalty owners." *Id.* The plaintiffs have further alleged that the defendants' retention of these monies caused "an immediate and measurable increase in [d]efendants' cash, revenue, and profits." *Id.* ¶ 77.

Count I, where the plaintiffs had sought damages for the defendants' alleged breach of implied covenants in the oil and gas leases, is grounded upon these same facts. Because the Court's dismissal of Count I is without prejudice and subject to amendment by the plaintiffs, the plaintiffs have the opportunity to assert an alternative claim for relief based upon contract and potentially have an adequate and available remedy at law for their alleged damages. *E.g., Elliott Industries Ltd. Partnership v. BP America Production Co.,* 407 F.3d 1091, 1117 (10th Cir.2005)(if contracts between parties exist, claim for underpayment of royalties must be grounded in parties' contractual relationship; equitable claim for unjust enrichment fails); *Naylor Farms, Inc. v. Anadarko OGC Co.,* No CIV–08–668–R, slip op. at 4 (W.D. Okla. June 15, 2011)(where enforceable contract governs parties' relationship, quasi-contractual remedies such as unjust enrichment not available).

The plaintiffs however at this stage of the litigation are permitted to plead alternative theories and demand relief in the alternative. *E.g.,* Rule 8(d), F.R.Civ.P.

Thus, while the plaintiffs will not be permitted to receive double recovery, assuming they choose to amend their first amended complaint and reassert their breach of contract action, they will be permitted to pursue these alternative theories of recovery and seek both legal and equitable relief at this stage. *E.g., McKnight v. Linn Operating,* No. CIV–10–30–R, slip op. 1t 10–11 (W.D.Okla. April 1, 2010)(party may allege equitable claim as alternative to contract-based claim as long as party not permitted double recovery on same injury). The defendants are therefore not entitled to dismissal of Count II.

■ The defendants have also challenged the plaintiffs' "claim" for accounting and disgorgement. In Count III of the first amended complaint, the plaintiffs have sought "an equitable accounting of [the] ... monies [wrongfully retained and used by the defendants] and a disgorgement of such monies...." Doc. 32 at 25, ¶ 80.

■■ Accounting is an equitable remedy, *e.g., Fleet v. Sanguine, Ltd.,* 854 P.2d 892 (Okla.1993), available if a party has prevailed on a theory of recovery. Disgorgement is also an equitable remedy, the purpose of which is not to compensate an aggrieved party, but to deprive the alleged wrongdoer of any ill-gotten gains. *E.g., Oklahoma Department of Securities ex rel. Faught v. Blair,* 231 P.3d 645, 654 (Okla. 2010).

Because certain theories of recovery survive the defendants' instant request for dismissal—theories for which equitable remedies are also available—and because the Court cannot determine at this stage whether these equitable remedies are "necessary to afford the parties complete relief," *Fleet,* 854 P.2d at 902 (footnote omitted), the Court finds that the defendants are not entitled at this juncture to

dismissal of the plaintiffs' "claim" for accounting or their "claim" for disgorgement.

■ The plaintiffs have also sought relief in the first amended complaint for fraud, deceit and constructive fraud. These causes of action as set forth in Counts IV, V and VI are based on the plaintiffs' contentions that the defendants misrepresented information on monthly royalty payment check stubs and that the monthly check stubs "concealed or failed to disclose facts about the price, volume, value, various products produced, and deductions, which [d]efendants had a duty to disclose...." Doc. 32 at 27, ¶ 93.

■ While Rule 12(b)(6) "does not require that [a] plaintiff establish a prima facie case in [the] ... complaint, the elements of each alleged cause of action help to determine whether [the] [p]laintiff has set forth a plausible claim." *Khalik* *3 (citations omitted). Accordingly, in Oklahoma, to ultimately prevail on a claim for actual fraud or deceit, the plaintiffs for purposes of the instant lawsuit " 'must show a material false representation, made with knowledge of its falsity or recklessly without knowledge as to its truth or falsity, as a positive assertion, with the intention that it be acted upon by another, who does act in reliance thereon, to his injury.' " *Roberts v. Wells Fargo AG Credit Corp.,* 990 F.2d 1169, 1172 (10th Cir.1993)(quoting *Varn v. Maloney,* 516 P.2d 1328, 1332 (Okla.1973)); *e.g.,* 15 O.S. § 58 (actual fraud defined); 76 O.S. §§ 2 (damages for deceit), 3 (deceits defined and classed).

■ " 'While actual fraud [or deceit] is 'the intentional misrepresentation of concealment of a material fact which sub-

stantially affects another person,' constructive fraud [which the plaintiffs have also alleged] involves the 'breach of either a legal or equitable duty.' " *Manokoune v. State Farm Mutual Automobile Insurance Co.,* 145 P.3d 1081, 1086 (Okla.2006)(quoting *Patel v. OMH Medical Center, Inc.,* 987 P.2d 1185, 1199 (Okla.1999)). "Constructive fraud 'does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose [and] may be defined as any breach of a duty which ... gains an advantage for the actor by misleading another to his prejudice.' " *Id.* at 1086–87 (quoting *Patel,* 987 P.2d at 1199); *e.g.,* 15 O.S. § 59. To be actionable, however, constructive fraud like actual fraud "require[s] detrimental reliance by the ... complaining [parties]." *Howell v. Texaco Inc.,* 112 P.3d 1154, 1161 (Okla.2004) (citation omitted).

■ The defendants have argued that the plaintiffs' allegations of intent in connection with the claims of fraud and deceit are insufficient.[5] Although a party alleging fraud and deceit must "state with particularity the circumstances constituting [the] fraud [or deceit]," Rule 9(b), F.R.Civ. P., "intent ... may be alleged generally." *Id.* This does not mean, however, that the plaintiffs are relieved of their obligation under *Twombly* and *Iqbal* to assert more than "[t]hreadbare recitals of the elements of [their] ... cause[s] of action ...," *Iqbal,* 129 S.Ct. at 1949, including the element of intent.

In their first amended complaint, the plaintiffs have contended that the "[d]efendants undertook to represent to [p]laintiffs ... on a monthly basis on their check stubs that a proper accounting had been made," Doc. 32 at 21, ¶ 65, and that the

---

5. "In contrast with actual fraud [or deceit], constructive fraud does not require an intent to deceive." *Roberts Ranch Co. v. Exxon Corp.,* 43 F.Supp.2d 1252, 1259 (W.D.Okla.1997)(citing *Gentry v. American*

*Motorist Insurance Co.,* 867 P.2d 468 (Okla. 1994)); *e.g., Manokoune v. State Farm Mutual Automobile Insurance Co.,* 145 P.3d 1081, 1086 (Okla.2006)(constructive fraud does not necessarily involve intent to deceive).

defendants on these monthly check stubs "affirmatively misrepresent[ed] the price,[6] quantity, value, and deductions." *Id.* at 22, ¶ 67. The plaintiffs have further alleged that the "[d]efendants knew when the material representations were made on the check stubs that they were false or misleading and/or at least made ... recklessly ..., or made ... with the intent that [p]laintiffs would rely on ... [them]," *id.* at 26, ¶ 92; *e.g., id.* at 27, ¶ 95, and also "knew the facts were peculiarly within the [d]efendants' knowledge and that the royalty owners were not in a position to discover the facts pertaining to the proper volume, values, and constituents coming from their wells." *Id.* ¶ 96.

Finally, the plaintiffs have alleged that the defendants'

> misrepresentations and omissions were intentionally made and were intended to suggest that the price was a third party commercial price without hidden deductions, the volumes were accurately measured without volumetric deductions, and that deductions would be shown on the check stub when in fact they were not.

*Id.* at 27–28, ¶ 98.

The Court finds the plaintiffs' allegations of intent in the case-at-bar surpass those allegations deemed insufficient in *Iqbal.* In that case, the plaintiffs allegations of discriminatory intent were found lacking where the plaintiff pleaded only that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement...." *Iqbal,* 129 S.Ct. at 1951.

In the instant case, the allegations underlying the plaintiffs' claims for fraud and deceit provide a factual basis for inferring the knowledge the defendants allegedly possessed and for inferring that the defendants knew that the monthly check stubs either "failed to accurately account to [p]laintiffs," Doc. 32 at 26, ¶ 90, "were at least ambiguous," *id.* at 27, ¶ 95, or "created a false impression of the actual facts to the royalty owners." *Id.*

The defendants have also contended that they are entitled to dismissal of the plaintiffs' claims for fraud, deceit and constructive fraud because the plaintiffs have failed to adequately allege in the first amended complaint the essential element of reliance or show "exactly how they acted in reliance on the information in the check stubs, or ... whether they changed their positions to their detriment based upon the information." Doc. 40 at 15.

In their first amended complaint, the plaintiffs have merely contended that the defendants made misrepresentations on the monthly check stubs and that the

> [p]laintiffs did rely on and/or are legally presumed to have relied upon these uniform written representations as being

---

**6.** The plaintiffs have alleged in particular that the

> [d]efendants represent a price which is lower than the price [they] receive[] from third party arm's-length sales because [d]efendants permit[] deductions from royalty based on marketing contracts which royalty owners do not know about and do not participate in making. These deductions go both to price and to volume. Consequently, when the [d]efendants' check stub reflects nothing in the "gross deducts" column, that is false. Likewise, when [the check stub] ... represents a gross quantity, that is not

the measured wellhead volume but something less. And the "price" is not a real price. Instead, the "price" is a calculated number that secretly reflects deductions or reductions. And, further the "price" does not disclose that [d]efendants are not putting ... [Natural Gas Liquids], Condensate, and/or Helium into marketable condition.... Consequently, the gross value is also incorrect and low. In short, the check stub fraudulently conceals the actual volume, price, and deductions taken from royalty owners.

Doc. 32 at 22, ¶ 67.

truthful and accurate, when they were not. . . .

Doc. 32 at 26, ¶ 92.[7]

Under the Supreme Court's plausibility standard, the plaintiffs were required to plead sufficient facts to create a reasonable inference of reliance. *E.g., Iqbal*, 129 S.Ct. at 1949; *Bryson*, 534 F.3d at 1286 (complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory).

The plaintiffs' allegation of reliance is conclusory and lacking factual specificity. Allegations are not entitled to be assumed to be true when they merely restate the essential elements of a claim rather than provide specific facts to support those elements. The plaintiffs' "obligation to provide the 'grounds' of [their] ... 'entitle[ment] to relief,' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). Accordingly, the plaintiffs' claims of fraud, deceit and constructive fraud—each of which requires the essential element of reliance—are not "well-pleaded," *id.*, with regard to the element of reliance and Counts IV, V and VI do not therefore "plausibly[8] give rise to an entitlement to relief." *Id.*

The defendants have also challenged the plaintiffs' claim for constructive fraud because the defendants had no duty to disclose information other than the information required by title 52, section 570.12(A) of the Oklahoma Statutes and further because the plaintiffs did not request information about any additional deductions.

The Production Revenue Standards Act ("PRSA"), 52 O.S. § 570.1 et seq., as the defendants have argued, not only dictates the disclosures to be made, *e.g., id.* § 570.12(A)(1)-(A)(9),[9] but also expressly

---

7. The plaintiffs have argued that their reliance on the information on the monthly check stubs is shown by their actions: (1) they deposited their royalty checks-an allegation not contained in the first amended complaint, and (2) they had not previously sued the defendants for the improperly deducted and/or retained monies. *See* Doc. 32 at 23, ¶ 69 ("Plaintiffs learned of these common misrepresentations on their check stubs after establishing an attorney-client relationship with [plaintiffs' counsel] and less than a month before filing or joining this suit").

In support of their arguments, the plaintiffs have cited in part cases addressing class actions; this case has yet to be certified as a class action, and absent any factual allegations that the named plaintiffs themselves acted in reliance on the defendants' alleged fraudulent or deceitful conduct, the Court finds this essential element has not been sufficiently pled.

8. In requiring "plausible grounds" in a complaint, the United States Supreme Court is "not impos[ing] a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. Rather, the standard

articulated by the Supreme Court "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the elements of the plaintiff's cause of action]. . . ." *Id.* (footnote omitted).

9. Title 52, section 570.12 of the Oklahoma Statutes

"requires information to be included for each property and month of sale with the payment from the sale of oil or gas. The required information includes: (1) the lease's or well's identification; (2) '[m]onth and year of sales included in the payment;' (3) "[t]otal barrels or MCF attributed to the payment;" (4) price per barrel or price per MCF; (5) the amount of severance and other production taxes, but not windfall profit taxes, attributed to the payment; (6) '[n]et value of total sales attributed to such payment after taxes are deducted;' (7) owner's interest in decimal form in production from the property; (8) '[o]wner's share of the [total] value of sales attributed to [such] payment prior to any deductions;' (9) '[o]wner's share of sales value attributed to such payment less owner's share of production and severance taxes[.]' "

requires "[a] specific listing of the amount and purpose of any *other* deductions from the proceeds attributable to such payment due to the owner upon request by the owner." *Id.* § 570.12(A)(10) (emphasis added).

However, as the Oklahoma Supreme Court noted in *Howell*, "[t]he PRSA provisions give the royalty owners a right to be accurately informed of the facts and place a legal duty on the [defendants] ... to accurately inform the plaintiffs of the facts on which the royalty payments are based." 112 P.3d at 1161. The instant plaintiffs have alleged that in making the disclosures as required by the PRSA, the defendants "concealed or failed to disclose facts about the price, volume, various products produced, and deductions, which [d]efendants had a duty to disclose to avoid presenting half-truths or misrepresentations." Doc. 32 at 27, ¶ 93. The plaintiffs have further alleged the "[d]efendants undertook the duty to properly account by making the statements in the check stubs on a monthly basis to royalty owners," *id.* ¶ 94, and by doing so, the "[d]efendants had a duty to make full and fair disclosure of all relevant facts." *Id.*

 "Constructive fraud is the concealment of a material fact by one who has a [legal or equitable] duty to disclose." *Howell*, 112 P.3d at 1161 (citations omitted). Because a claim of constructive fraud becomes actionable "where one undertakes to speak and conveys only partial information," *Roberts Ranch Co. v. Exxon Corp.*, 43 F.Supp.2d 1252, 1259 n. 12 (W.D.Okla.1997) (citation omitted), and because "[o]ne conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud ... since concealment is in effect a false representation that what is disclosed is the

whole truth," *id.* (citation omitted), the Court finds that the plaintiffs' allegations in support of their claim for constructive fraud are sufficient both factually and legally and that the defendants are therefore not entitled to dismissal of the plaintiffs' claim for constructive fraud based upon this argument.

The defendants have also argued that they are entitled to dismissal of the plaintiffs' claim for breach of fiduciary duty as set forth in Count VII of the first amended complaint. In support of this count, the plaintiffs have alleged that they have wells that have been statutorily unitized and that a fiduciary duty has been imposed on the defendants as a result thereof as well as by

> the Oklahoma Corporation Commission ("OCC") orders made pursuant to [52 O.S. §§ 287.1–287.15 and/or 52 O.S. § 87.1,] and/or the unitization order and agreement with [p]laintiffs ... based on field-wide units or secondary recovery under ... [sections] 287.1–287.15 and also by the creation of drilling and spacing units under ... section 87.1.

Doc. 32 at 29, ¶ 105.

The plaintiffs have further alleged that the " 'defendants are the unit operator by appointment from the [OCC] ... for [p]laintiffs' wells," *id.* ¶ 106, that the defendants therefore owe a fiduciary duty to the plaintiffs under the PRSA, 52 O.S. § 570.10(A), and that the defendants have breached this duty "by failing to properly report, account for, and distribute gas proceeds to [p]laintiffs ... for their proportionate royalty share of gas production." Doc. 32 at 29, ¶ 108.

First, in connection with the latter allegations, it is clear under extant case law

*Howell v. Texaco Inc.*, 112 P.3d 1154, 1161 (Okla.2004)(quoting 52 O.S. § 52 O.S.

570.12(A)(1)-(A)(9)).

that the plaintiffs may not pursue a claim for breach of fiduciary duty under section 570.10(A). *E.g., McKnight v. Linn Operating,* No. CIV–10–30–R, slip op. at 1 (W.D. Okla. June 23, 2011); *Naylor Farms, Inc. v. Anadarko OGC Co.,* No. CIV–08–688–R, slip op. at 2–3, 2011 WL 7267853 (W.D.Okla. June 23, 2011); *McKnight,* slip op. at 6 (April 1, 2010). The defendants are therefore entitled to dismissal of those allegations in Count VII that seek to hold the defendants liable for a breach of fiduciary duty under this statutory section.

■ As to the plaintiffs' claims for breach of fiduciary duty grounded in the unitization orders, the Court finds that the plaintiffs are entitled to pursue such claims because they "have pled [they] own[ ] royalty interests which are subject to [OCC] unitization orders," *Morrison v. Anadarko Petroleum Corp.,* 2010 WL 2721397 *2 (W.D.Okla. July 6, 2010); *see* Doc. 32 at 29, ¶ 104, and further finds that the allegations advanced in support of these claims are sufficient to survive the defendants' request for dismissal. *E.g., id.; McKnight,* slip op. at 2–4 (April 1, 2010).

■ The plaintiffs have also asserted in Counts VIII[10] and IX,[11] respectively, causes of action for tortious breach of the implied duty of good faith and fair dealing and tortious breach of lease. The defendants have argued that dismissal of these causes of action is warranted, first, because there are "no factual allegations [in the first amended complaint] about the leases, gas, or underlying marketing ar-

rangements," Doc. 40 at 13, to support the plaintiffs' claims and, second, because the causes of action are contrary to Oklahoma law.

■ "Tort recovery for bad faith is one of the two remedies provided for breach of the implied duty to deal fairly and in good faith in the performance of a contract." *Embry v. Innovative Aftermarket Systems LP.,* 247 P.3d 1158, 1160 (Okla.2010) (citation omitted). Liability "depends upon the existence of a 'special relationship,' " *id.*(citation omitted), between the contracting parties that "is marked by (1) a disparity in bargaining power where the weaker party has no choice of terms .... and (2) the elimination of risk." *Id.* (citation omitted).

The Oklahoma Supreme Court has "expressed [its] reluctance to extend tort recovery for bad faith beyond the insurance field," *id.* (citation omitted), and courts in this judicial district have held that the lessee-royalty owner relationship does not qualify as the type of "special relationship" necessary to support these causes of action. *E.g., Chieftain Royalty Co.,* slip op. at 5–7 (July 14, 2011)(plaintiffs have not alleged facts showing requisite special relationship, i.e., that leases were adhesion contracts which eliminates risk; court doubts oil and gas leases could give rise to such special relationships); *Morrison,* slip op. at 3–4 (July 6, 2010); *McKnight,* slip op. at 10 (April 1, 2010)(although courts have recognized special relationship in context of royalty owners and operators, court does not conclude upon review of Okla-

---

**10.** In Count VIII, the plaintiffs have alleged that "[i]mplied into every contract and lease is the duty to deal honestly and fairly," Doc. 32 at 30, ¶ 115, and that the defendants, with which the plaintiffs have "a special relationship," *id.* ¶ 113, breached this duty when they failed "to properly account for and pay royalty." *Id.* ¶ 114.

**11.** In Count IX, the plaintiffs have alleged that "[t]he duties imposed by the lease, operator statutes and OCC orders, and PRSA require that the royalty accounting, payment, and reporting be done with care, skill, and faithfulness, but [d]efendants have not only failed to do so, but have knowingly and/or intentionally failed to do so...." *Id.* at 31, ¶ 119.

homa jurisprudence that existence of such relationship alone gives rise to claim for tortious breach of contract or breach of duty of good faith in every situation where royalty owners perceive underpayment by operators). Accordingly, the defendants are entitled to dismissal of these claims for relief.

■ The defendants have also challenged the plaintiffs' claim for conversion as set forth in Count X, wherein the plaintiffs have alleged that "[b]y failing to properly pay [p]laintiffs ... for royalty, [d]efendants are liable for conversion." Doc. 32 at 31, ¶ 124. This claim is grounded on the plaintiffs' allegation that pursuant to "[section] 570.10(A), the proceeds of the sale of oil and gas attributable to a royalty owner's interest are considered specifically identifiable monies owned by the royalty owner and held in trust for him by [d]efendants...." *Id.* ¶ 123.

As Judge Russell found in *McKnight,* the plaintiffs' allegations "place this case squarely in the realm of the debtor-creditor relationship, for which a conversion claim does not lie." *McKnight,* slip op. at 7 (April 1, 2010)(footnote omitted). The Court further finds that the plaintiffs' reliance on section 570.10(A) [12] is misplaced. As Judge Russell has stated,

[t]his statute does not actually require segregation of specifically identifiable funds for the benefit of royalty owners such that the funds may be recovered in an action for conversion.

*McKnight,* slip op. at 8 (April 1, 2010). *But see Foster v. Merit Energy Co.,* No. CIV–10–758–F (W.D.Okla. October 22, 2010). Accordingly, the defendants are entitled to dismissal of the plaintiffs' conversion claims as set forth in Count X.

■ The defendants have also challenged the "[p]laintiffs' scatter-shot attempt to hold each [d]efendant liable for all other [d]efendants' alleged actions...." Doc. 40 at 22. In the first amended complaint, the plaintiffs have alleged that "Cimarex Energy is the parent company of Prize, Magnum Hunter, [Gruy] ..., and Key, and is sued ... as a lessee, operator, payor of royalty, and marketer of gas." Doc. 32 at 4, ¶ 9 (footnote omitted). The plaintiffs have further alleged that

[t]he written and oral agreements [executed by, between and among Prize, Magnum Hunter, Gruy and Key and Cimarex Energy] permit Cimarex Energy to function by using its subsidiaries as conduits as essentially one company, and all of the profits and losses of each subsidiary are coalesced into the parent company, Cimarex Energy.

*Id.* at 6, ¶ 18.

Based upon these and additional allegations, the plaintiffs have sought to hold Cimarex Energy liable as the agent for Prize, Magnum Hunter, Gruy and Key, *see id.* at 6–7, ¶¶ 19–22, to hold each named defendant liable as a joint venturer, *see id.* at 7, ¶¶ 23–25, and to hold each named defendant liable as the alter ego of each other named defendant. *See id.* 7–8, ¶¶ 26–28. Finally, the plaintiffs have alleged in the alternative, should the defendants be considered "separate and distinct entities," *id.* at 8, ¶ 29, that the defendants "engage[d] in a civil conspiracy to short-

---

**12.** Section 570.10(A) provides in pertinent part that

[a]ll proceeds from the sale of production shall be regarded as separate and distinct from all other funds of any person receiving or holding the same until such time as such proceeds are paid to the owners legally

entitled thereto. Any person holding revenue or proceeds from the sale of production shall hold such revenue or proceeds for the benefit of the owners legally entitled thereto....

52 O.S. § 570.10(A).

change royalty owners and are jointly and severally liable as civil conspirators." *Id.*

In support of their contention that Cimarex Energy is the agent of the other named defendants, the plaintiffs have asserted

(1) that in 2003 and 2005, Cimarex Energy entered into Service Agreements with Key and with Magnum Hunter Resources, Inc., and its subsidiaries, respectively;

(2) that these Service Agreements "permit Cimarex Energy to act as an agent," Doc. 32 at 6, ¶ A(20), for Key, Magnum Hunter and Prize, and "even without a written Service Agreement," *id.*, Cimarex Energy "has the same agency relationship," *id.*, with Gruy, which "allows Cimarex Energy to market gas and gas constituents from Oklahoma wells owned and operated by its subsidiaries and to pay royalty on such wells[,]" *id.*;

(3) that Cimarex Energy elected officers and appointed employees "as attorney-in-fact for [the] purpose of carrying out these duties for its subsidiaries[,]" *id.* at 7, ¶ A(21); and

(4) that "[t]he terms of this agency relationship and its existence are undisclosed to royalty owners." *id.* ¶ A(22).

■■■ As case law teaches, "[c]orporations are distinct legal entities, and generally one corporation will not be held responsible for the acts of another." *Gilbert v. Security Finance Corporation of Oklahoma, Inc.*, 152 P.3d 165, 175 (Okla.2006)(footnote omitted). However, "[o]ne corporation may be held liable for the acts of another [corporation] ... if ... one corporation is merely an ... agent of the other." *Id.* (footnote omitted).

■■■ The defendants have conceded that "[a] principal may be held liable for an agent's conduct if done within the scope of the agency relationship," Doc. 40 at 23 (citing *Ponca Tribe of Indians v. Continental Carbon Co.*, 2008 WL 5205679 *3 (W.D.Okla. December 11, 2008)), and that the "agent also may be held individually liable for its conduct that falls outside of the scope of the agency relationship." *Id.* (citing *Carter v. Schuster*, 227 P.3d 149, 155 (Okla.2009)).

■■■ "Agency relationships can be formed either expressly through a contract or they can be implied from the actions of the parties," *Ponca Tribe of Indians* *3 (citation omitted); *e.g., Farmers National Grain Corporation v. Young*, 187 Okla. 298, 102 P.2d 180, 185 (1940)(whether agency in fact has been created is determined by relations of parties under their agreements or acts),[13] and an agency " 'relationship ... results from the manifestation of consent by one [corporation] ... to another that the other shall act on [its] ... behalf and subject to [its] ... control, and consent by the other so to act.' " *Agee v. Gant*, 412 P.2d 155, 160 (Okla.1966)(quoting *Farmers National Grain*, 187 Okla. at 298, 102 P.2d at 185).

In reviewing the record, the Court finds that the plaintiffs' allegations of an agency relationship among and between the defendants are more than mere recitals or legal conclusions. In accepting the well-pleaded factual allegations as true and after construing the same in the light most favorable to the plaintiffs, the Court finds that the plaintiffs have advanced sufficient factual content in support of their theory of agency regarding their claims of underpayment and/or nonpayment of royalties

---

13. "[T]he law itself makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence but also its nature and extent, rests ordinarily upon the party who alleges it." *Agee v. Gant*, 412 P.2d 155, 160 (Okla.1966) (citation omitted).

as a result of improper accounting methods to survive the defendants' request for dismissal.

In support of their theory that the defendants may also be held liable because they "are engaged in a joint venture to produce, market, and pay royalties, and receive revenues and profits from gas and gas constituents produced from Oklahoma wells," Doc. 32 at 7, ¶ 23, the plaintiffs have alleged that "Cimarex Energy, as the parent company, annually receives the benefit of all of the revenue from its subsidiaries," *id.* ¶ 24, and "[a]s a result, the joint venturers are liable for the conduct of one another." *Id.* ¶ 25.

 In Oklahoma, "[a] joint adventure is a special combination of two or more persons where, in some specific venture, a profit is jointly sought without any partnership or corporate designation . . .," *Price v. Howard,* 236 P.3d 82, 90–91 (Okla. 2010), and "[w]hile the chief characteristic of a joint venture is the seeking of joint profits from a transaction, no single factor is sufficient to establish that the parties are engaged in a joint venture." *Id.* at 91 (footnote omitted). Rather, Oklahoma recognizes "three requisite elements[:] . . . 1) a joint interest in property; 2) an express or implied agreement to share profits and losses of the venture; and 3) action or conduct showing cooperation in the project." *Id.* (footnote omitted).

 While Rule 12(b)(6) does not require the plaintiffs to establish each of these essential elements at this stage of the litigation, reference to these elements is "help[ful] to determine whether [the] [p]laintiff[s] ha[ve] set forth a plausible claim." *Khalik,* at 1192 (citations omitted). The Court finds that the plaintiffs' allegations that the defendants "are engaged in a joint venture," Doc. 32 at 7, ¶ 23, that Cimarex Energy "receives the benefit of all of the revenue from its subsidiaries," *id.* ¶ 24, and that the defendants

together "receive revenues and profits," *id.* ¶ 23, are not entitled to the assumption of truth because they "are the type of conclusory and formulaic recitations disregarded by the [Supreme] Court in *Iqbal.*" *Khalik,* at 1193 (citing *Iqbal,* 129 S.Ct. at 1949). Thus, the plaintiffs' general assertions of "joint venture," without any factual details whatsoever, are insufficient. *E.g., id.* (citing *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), to hold that while specific facts not necessary, some facts are).

 A "corporation may [also] be held liable for the acts of another [corporation] under the theory of alter-ego liability if . . . one corporation is merely an instrumentality . . . of the other." *Gilbert,* 152 P.3d at 175 (footnote omitted). In this connection, the plaintiffs have contended that

> Cimarex Energy does, or certainly has the right to, control almost all of the financial decisions of its subsidiaries, such as budgeting, financial management, accounting and auditing, legal matters, administrative and engineering, matters relating to operations to produce, explore for, develop, treat, negotiate and lease, enter into unitization agreements, enter into marketing contracts, or gather gas, and anything else touching or concerning the affairs, business, interest or assets of the subsidiary[.]

Doc. 32 at 7, ¶ 27, and that this "control or right to control makes all of the subsidiaries in Cimarex Energy alter egos of one another." *Id.* at 8, ¶ 28.

In determining whether alter ego liability is applicable in this case, the Court has looked to the law of the forum, which the parties have cited, and as Oklahoma courts recognize,

> [t]he factors for determining if one corporation may be held liable for the acts

of another hinge primarily on control. They include: (1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations have common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate.

*Gilbert,* 152 P.3d at 175 (footnotes omitted).

In *Chieftain Royalty,* on which the defendants have relied, Judge Russell rejected the plaintiffs' attempt to assert an alter-ego theory on the grounds that the plaintiffs had failed to allege "any facts relating to the factors which are determinative of whether one corporation is the alter ego of the other." Slip op. at 4 (July 14, 2011). The instant plaintiffs however, unlike the plaintiffs in *Chieftain Royalty,* have asserted

(1) that "Cimarex Energy is the parent company of Prize, Magnum Hunter, [Gruy] ..., and Key ...," Doc. at 32 at 4, ¶ 9;

(2) that "[i]n 2002, Key was acquired by and merged into Cimarex Energy, and most of Key's management bec[ame] the management of Cimarex Energy," *id.* ¶ 10;

(3) that in 2005, "Magnum Hunter Resources, Inc., was acquired by and merged into Cimarex Energy and out of existence, but after the merger, Magnum Hunter ... became a wholly-owned subsidiary of Cimarex Energy[,]" *id.;*

(4) that "[a]t the same time, Prize ... and Gruy were also acquired by Cimarex Energy because they were affiliated companies of Magnum Hunter[,]" *id.;*

(5) that written Service Agreements "and oral agreements permit Cimarex Energy to function by using its subsidiaries as conduits as essentially one company, and all of the profits and losses of each subsidiary are coalesced into the parent company, Cimarex Energy[,]" *id.* at 6, ¶ 18;

(6) that "[t]o the extent the wholly owned subsidiaries, Prize, Magnum Hunter, Key, and [Gruy] ..., even have directors and officers, they are common to one another and common with Cimarex Energy," *id.,* including "Paul Korus [who] is the [v]ice [p]resident for all of them[,]" *id.;*

(7) that "Cimarex Energy pays the salaries for most of the employees performing the marketing, accounting, and payment of royalty function for all of them[,]" *id.;*

(8) that "[l]osses or profits of all of the subsidiaries are ultimately paid or owned by Cimarex Energy[,]" *id.;*

(9) that "[m]ost of the subsidiar[ies'] assets were originally merged into Cimarex Energy and then spun down into the subsidiar[ies,]" *id.;*

(10) that "Cimarex Energy refers to the oil and gas businesses of these subsidiaries as its own group[,]" *id.;* and

(11) that "Cimarex Energy dominates and controls what these subsidiaries do with respect to Oklahoma oil and gas marketing and royalty payment." *Id.*

As Oklahoma courts have recognized, "a common board of directors and a unity of corporate purpose [are] ... insufficient," *Warner v. Hillcrest Medical Center*, 914 P.2d 1060, 1067 (Okla.App.1995) (citation omitted), alone to "disregard the fiction of separate corporate legal entity in order to hold one corporation responsible for the obligations of another corporation...." *Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.*, 178 Okla. 15, 61 P.2d 645, 647–48 (1936). Rather, the allegations must show "that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation." *Id.* at 15, 61 P.2d at 648.

While the first amended complaint does to some extent merely parrot certain of the factors found pertinent by the Oklahoma Supreme Court in *Gilbert*, the Court is nevertheless constrained to find, albeit a close call under *Twombly* and *Iqbal*, that the instant plaintiffs have pled sufficient factual matter regarding the control exercised by Cimarex Energy to permit the Court to draw the reasonable necessary inferences and to deny the defendants' request for dismissal of this theory of liability at this stage.

 Finally, the plaintiffs have asserted in the alternative that the defendants should be held jointly and severally liable as co-conspirators for the alleged underpayment or nonpayment of royalties that resulted through improper accounting methods.

> A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. There can be no civil conspiracy where the act complained of and the means employed are lawful.

*Brock v. Thompson*, 948 P.2d 279, 294 (Okla.1997)(emphasis deleted)(footnotes omitted). "In essence, a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." *Id.* at 294 n. 66.

 In Oklahoma, the essential elements of a civil conspiracy that a plaintiff must ultimately establish

> "are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result."

*Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 175 (Okla.2008)(quoting *Closs v. Goose Creek Consolidated Independent School District*, 874 S.W.2d 859, 871 (Tex.App.1994)(further citation omitted)).

The defendants have complained that the plaintiffs' sole conclusory statement that "the Service Agreements and other unwritten agreements between ... [the defendants] are agreements in which they engage in a civil conspiracy to shortchange royalty owners," Doc. 32 at 8, ¶ 29, is insufficient The Court agrees.

As the Supreme Court stated in *Twombly*, "[t]he need at the pleading stage for allegations plausibly suggesting (and not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" 550 U.S. at 557, 127 S.Ct. 1955. "[E]ven conduct consciously undertaken," *id.*, without more, is but a "naked assertion of conspiracy[,]" *id.*, and its essential element of agreement.

■ The defendants have also challenged the timeliness of certain claims [14] for relief asserted by the plaintiffs. The timeliness of the plaintiffs' equitable claims, to the extent the same are claims and not mere remedies such as the plaintiffs' "claims" for accounting and disgorgement, is arguably governed by the doctrine of laches.

> "The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case, and according to right and justice. Laches in legal significance is not merely delay, but delay that works as a disadvantage to another."

*Stallings v. White,* 194 Okla. 649, 153 P.2d 813, 817 (1944)(quotation omitted). And, in determining whether any delay of the plaintiffs operated to the disadvantage of the defendants, the Court may also consider applicable and analogous limitations periods, acknowledging, however, that in certain situations, " 'circumstances may call for not doing so.' " *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1525 (10th Cir.1990)(quoting *Pearson v. Hall,* 719 P.2d 480, 482 (Okla.App.1986)). In so doing, the Court finds that such equitable determinations, which entail more than a finding that the factual allegations of the first amendment are well-pleaded, are more appropriately resolved at a later stage in the lawsuit. Accordingly, the defendants are not entitled to dismissal of the plaintiffs' equitable claims on the grounds of timeliness.

■ The plaintiffs' claim for breach of the oil and gas leases is subject to a five-year statute of limitations. *E.g.,* 12 O.S. § 95(A)(1). Hitch filed its lawsuit on December 6, 2010, and its first amended complaint on May 27, 2011; thus, at first glance, the defendants would be entitled to dismissal of any allegations that seek relief against Cimarex Energy and against Key, Magnum Hunter, Prize and Gruy for conduct occurring prior to December 6, 2005, and May 27, 2006, respectively, in connection with the breach of lease claims.

The plaintiffs have responded that there are no timeliness issues in this case since the payment of royalties involves a series of payments and adjustments and constitutes an "open account." Oklahoma courts recognize that an "outstanding and open account"

> is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions, not reduced to writing, and subject to future settlement and adjustment.

*Nicholson v. Thixton,* 448 P.2d 454, 455 (Okla.1968) (*Checotah Hardware Co. v. Housel,* 169 Okla. 112, 35 P.2d 966, 967 (1934)). Three factors must exist

> to establish an open account: (1) an account based upon running or concurrent dealings; (2) ... dealings [that] have not been closed, settled or stated; [and] (3) some term of the contract remains to be settled between the parties, or the agreement contemplates further transactions between the parties.

*Id.*

In their first amended complaint, the plaintiffs have alleged that the defendants represent the royalty calculations on the monthly check stubs and that "each monthly payment was subject to correction and that [d]efendants have made prior period adjustments for years." Doc. 32 at 21, ¶ 64. The plaintiffs have further alleged that

> [s]ince the payments of royalties to royalty owners are open accounts, [the stat-

---

14. Since certain claims are dismissed with prejudice and are not subject to amendment, the Court has not considered the timeliness of the allegations giving rise to those claims: Counts VII (breach of fiduciary duty under section 570.10(A)), VIII, IX and X.

ute of] limitations does not begin to run at all (or is tolled) until the final payment of such account has been made, i.e. after the well has ceased production and a final payment has been made.

*Id.*

The Court disagrees. The defendants' obligation to pay royalties arises from an express written agreement and no term of that contract remains to be settled between the parties. *Cf. Globe & Republic Insurance Co. of America v. Independent Trucking Co.,* 387 P.2d 644, 647 (Okla.1963)(express contract that defines duties and liabilities of parties is not as a rule an open account). Accordingly, as to the plaintiffs' breach of lease claims, should such claim be amended and reasserted, Cimarex Energy is entitled to dismissal of any allegations that seek relief against it for conduct occurring prior to December 6, 2005, and Key, Magnum Hunter, Prize and Gruy are entitled to dismissal of any allegations that seek relief against them for conduct occurring prior to May 27, 2006.

██ The defendants have also challenged the timeliness of the plaintiffs' claims for fraud, deceit, constructive fraud, breach of fiduciary duty and unjust enrichment, which are subject to a two-year limitations period. *E.g.,* 12 O.S. § 95(A)(3); *e.g., City of Tulsa v. Bank of Oklahoma, N.A.,* 280 P.3d 314, 320–21, 2011 WL 4790939 *6 (Okla.2011)(unjust enrichment claim governed by two-year limitations period). As stated, Hitch filed this lawsuit on December 6, 2010, and its first amended complaint on May 27, 2011. Cimarex Energy and Prize, Magnum Hunter, Key and Gruy have argued that they would therefore be entitled to dismissal of any allegations that seek relief for conduct underlying these claims occurring prior to December 6, 2008, and May 27, 2009, respectively.

Title 12, section 95 of the Oklahoma Statutes provides that any action seeking relief on the ground of fraud must be brought "[w]ithin two (2) years," *id.,* "after the cause of action shall have accrued," *id.* § 95(A), but that "the cause of action ... shall not be deemed to have accrued until the discovery of the fraud[.]" *Id.* § 95(A)(3). *E.g., City of Tulsa,* 280 P.3d at 320, 2011 WL 4790939 *6–7 (applying discovery rule to unjust enrichment claim).

In an attempt to evade the two-year bar, the plaintiffs have contended in the first amended complaint that due to the

> [d]efendants' misrepresentations, omissions, and/or general scheme to conceal ... [their] underpayments, [p]laintiffs ... did not become aware, and could not have become aware through the exercise of reasonable diligence, that such schemes were in existence. The only way to know was for [d]efendants to disclose their royalty payment methodology, i.e. a netback pricing scheme based on deductions set forth in a gas marketing contract, which were confidential and could not, would not, and were not disclosed to royalty owners.

Doc. 32 at 23, ¶ 68.

The plaintiffs have further contended that

> royalty owners in Kansas, in which Cimarex [Energy] uses the same royalty payment methodology, asked for information about deductions being taken, and [were] erroneously told by Mike Hart ... that no improper deductions were being taken. Thus, requesting such information from Cimarex [Energy] to disclose its own improper conduct ... was and is a useless act.

*Id.*

In *Resolution Trust Corporation v. Grant,* 901 P.2d 807 (Okla.1995), the Okla-

homa Supreme Court confirmed that " 'Oklahoma follows the discovery rule,' " *Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1189 (Okla.2011), which "allows limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *Id.* (footnote omitted). The rule operates

> to delay the running of the statute of limitations ..., [and] it rests on the inability of the injured party, despite the exercise of due diligence, to know of the injury or its cause. Its purpose is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have the same rights as those who suffer an immediately ascertainable injury.

*Id.* (footnote omitted).

To the extent, if any, the plaintiffs were required to assert in their first amended complaint allegations regarding the circumstances surrounding their discovery of the defendants' alleged wrongful conduct and the reasons why the defendants' "misrepresentations, omissions, and/or general scheme to conceal its underpayments," Doc. 32 at 23, ¶ 68, or their "unlawful and improper retention and use of monies that should have been paid to [p]laintiffs," *id.* at 24, ¶ 78, could not have been discovered earlier, the Court finds, accepting those allegations as true for purposes of the instant motion, that the issues of discovery and diligence have been sufficiently pled at this stage of the litigation. Accordingly, as to these claims for relief, Cimarex Energy is not entitled to dismissal of those allegations describing conduct occurring prior to December 6, 2008, and Prize, Magnum Hunter, Key and Gruy are not entitled to dismissal of those allegations describing conduct occurring prior to May 27, 2009.

Finally, the defendants have sought dismissal of the plaintiffs' prayer for punitive damages. *See* Doc. 32 at 32, ¶ b; *e.g.*, *id.* at 28, ¶ 102; *id.* at 30, ¶ 111; *id.* ¶ 117; *id.* at 31, ¶ 121; *id.* ¶ 125. Such damages are available under the tort causes of action that either have survived the defendants' challenges or are subject to amendment. For that reason, the Court finds it premature to dismiss that portion of the plaintiffs' prayer for relief seeking such damages or to hold that the allegations in the lawsuit fail to establish a plausible entitlement to such damages.

Accordingly, the Court

(1) GRANTS the defendants' Motion to Dismiss [Doc. 40] to the extent the Court hereby DISMISSES Counts I, IV, V, VI, VII (breach of fiduciary duty under section 570.10(A)), VIII, IX and X, the plaintiffs' allegations of conspiracy and joint venture, any allegations that seek relief against Cimarex Energy for conduct (in connection with Count I) occurring prior to December 6, 2005, and any allegations that seek relief against Key, Magnum Hunter, Prize and/or Gruy for conduct (in connection with Count I) occurring prior to May 27, 2006;

(2) but FINDS that the Court's dismissal of Counts I, IV, V and VI and the plaintiffs' allegations of conspiracy and joint venture is without prejudice and that the plaintiffs should be granted the opportunity, subject to Rule 11, F.R.Civ.P., to amend their first amended complaint in accordance with *Twombly* and *Iqbal* "to frame a 'complaint with enough factual matter (taken as true) to suggest' that [they are] ... entitled to relief," *Robbins*, 519 F.3d at 1247 (quoting 550 U.S. at 556, 127 S.Ct. 1955);

(3) DIRECTS the plaintiffs, if they intend to pursue any dismissed claims or theories of liability, to file a second amend-

ed complaint within fourteen (14) days of this date; and

(4) DENIES the defendants' Motion to Dismiss in all other respects.