OSCN Found Document:RANDLE v. CITY OF TULSA

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 RANDLE v. CITY OF TULSA
2024 OK 40
Case Number: 121502
Decided: 06/12/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 40, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

LESSIE BENNINGFIELD RANDLE, VIOLA FLETCHER, and MURIEL WATSON, as Personal Representative for the ESTATE OF HUGHES VAN ELLIS, SR., Plaintiffs/Appellants, v.
CITY OF TULSA, a municipal corporation, TULSA REGIONAL CHAMBER, a domestic not-for-profit corporation, BOARD OF COUNTY COMMISSIONERS FOR TULSA COUNTY, OKLAHOMA; VIC REGALADO, in his official capacity as Sheriff of Tulsa County; OKLAHOMA MILITARY DEPARTMENT, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
HONORABLE CAROLINE WALL, DISTRICT JUDGE
¶0 Plaintiffs, survivors of the Tulsa Race Massacre, brought suit against Defendants seeking abatement of the public nuisance caused by Defendants' unreasonable, unwarranted, and/or unlawful acts and omissions that began with the Tulsa Race Massacre of 1921 and continue to this day. Plaintiffs also sought recovery for unjust enrichment for Defendants' exploitation of the Massacre for their own economic and political gain. The district court granted Defendants' motion to dismiss finding Plaintiffs' Petition failed to state a justiciable public nuisance claim and failed to allege a legally cognizable abatement remedy and dismissed Plaintiffs' unjust enrichment claim for failure to cure a defective pleading. Plaintiffs appealed, asserting the district court erred in dismissing both claims. We retained this matter on Plaintiffs' motion and hold that Plaintiffs' grievances do not fall within the scope of our state's public nuisance statute and Plaintiffs' allegations do not support a claim for the equitable doctrine of unjust enrichment.

MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
TRIAL COURT AFFIRMED.
Damario Solomon-Simmons, and Jourdan Johnson, SolomonSimmonsLaw, Tulsa, Oklahoma, Jana L. Knott, Bass Law, Oklahoma City, Oklahoma, Lashandra Peoples-Johnson and Cordal Cephas, Johnson Cephas Law, PLLC, Tulsa, Oklahoma, J. Spencer Bryan and Steven J. Terrill, Bryan & Terrill Law, PLLC, Edmond, Oklahoma, Erika L. Simonson, Randall T. Adams, Michael E. Swartz, McKenzie E. Haynes, and Sara E. Solfanelli, Schulte Roth & Zabel, LLP, New York, New York, Maynard M. Henry, Sr., Maynard M. Henry, Sr., Attorney at Law, P.C., Fairfax, Virginia, Eric J. Miller, Los Angeles, California, for Plaintiffs/Appellants.
Garry M. Gaskins, II, Solicitor General, Will Flanagan II, Assistant Solicitor General, Kevin L. McClure, Assistant Attorney General, Office of the Attorney General for the State of Oklahoma, Oklahoma City, Oklahoma, for Defendant/Appellee Oklahoma Military Department.
Keith A. Wilkes, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, Oklahoma, for Defendants/Appellees Board of County Commissioners for Tulsa County and Vic Regalado, in his official capacity as Sheriff of Tulsa County.
Kristina L. Gray, R. Lawson Vaughn, and T. Michelle McGrew, Attorney's for the City of Tulsa, Tulsa, Oklahoma, for Defendant/Appellee City of Tulsa.
John H. Tucker, Colin H. Tucker, Kerry R. Lewis, and Austin T. Jackson, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, Oklahoma, for Defendant/Appellee Tulsa Regional Chamber.

ROWE, V.C.J.:
¶1 Unlike most cases that come before this Court, the tragedy that forms the basis of the present appeal is acknowledged and memorialized, at least in part, in Oklahoma law. In 1997, the Oklahoma Legislature passed House Joint Resolution 1035, which established the 1921 Tulsa Race Riot Commission ("Commission") and tasked the Commission with developing the historical record of the racial violence that transpired in the Greenwood community of Tulsa, Oklahoma, between May 31 and June 1, 1921. We now know these events as the Tulsa Race Massacre ("Massacre").
¶2 When the Commission completed its final report in 2001,
[1] a portion of its findings were inscribed into Oklahoma law.[2] The Commission found that there was a "breakdown of the rule of law in Tulsa on May 31-June 1, 1921" after a white mob assembled in the city, threatening the life of Dick Rowland, an African-American who was accused of raping a white woman. 74 O.S. § 8000.1(2). The Commission found "strong evidence" that:
[S]ome local municipal and county officials failed to take actions to calm or contain the situation once violence erupted and, in some cases, became participants in the subsequent violence which took place on May 31 and June 1, 1921, and even deputized and armed many whites who were part of a mob that killed, looted, and burned down the Greenwood area . . . .

Id. The destruction inflicted upon the Greenwood community by the mob was staggering, including the killing of between 100 and 300 people, predominantly African Americans, and the destruction of more than 1,200 homes, schools, churches, and businesses. 74 O.S. § 8000.1(3).
¶3 Even after the initial violence subsided, local officials engaged in actions that exacerbated the harm. State and local officials participated in the mass arrests and detention of Greenwood residents, and black detainees could only be released upon the application of a white person. When Greenwood residents attempted to rebuild their community, they were met with frustration. In one notable example, local officials "attempted to block the rebuilding of the Greenwood community by amending the Tulsa building code to require the use of fire-proof material in rebuilding the area thereby making the costs prohibitively expensive . . . ." 74 O.S. § 8000.1(3).
BACKGROUND
¶4 On September 1, 2020, Plaintiffs
[3] in their original Petition asserted claims of public nuisance and unjust enrichment. In their public nuisance claim, Plaintiffs alleged that as a result of the Massacre and the unlawful actions of Defendants both during and after, Plaintiffs "continue to face racially disparate treatment and City-created barriers to basic human needs, including jobs, financial security, education, housing, justice, and health, that annoy, injure, or endanger their comfort, repose, health, or safety and render them insecure in life, or in the use of their property."[4] In their unjust enrichment claim, Plaintiffs alleged that Defendants appropriated the name "Black Wall Street," a moniker for the Greenwood neighborhood, for use in marketing efforts to promote the City of Tulsa as a tourist attraction, without returning any of those benefits to members of the community.
¶5 Defendants
[5] sought dismissal on several grounds including, inter alia, failure to comply with the Governmental Tort Claims Act, failure to state a cognizable public nuisance claim, equitable defenses, lack of standing, and constitutional issues with the requested abatement remedies. The motions to dismiss prompted Plaintiffs to file the First Amended Petition. Both the Petition and the First Amended Petition sought a broad set of remedies, including: (1) declaratory judgments regarding the role of public officials in the Massacre and the lasting harm it created; (2) injunctive relief preventing Defendants from obtaining any further financial benefit from the Massacre; (3) an accounting of any financial benefits received already; and (4) a number of financial and social remedies to abate the alleged ongoing public nuisance. Defendants renewed their motions to dismiss Plaintiffs' First Amended Petition.
¶6 While the Motions to Dismiss were under consideration, we issued our decision in State ex rel. Att'y Gen. of Oklahoma v. Johnson & Johnson, 2021 OK 54, 499 P.3d 719, holding that an opioid manufacturer's actions in manufacturing, marketing, and selling of prescription opioids did not constitute a public nuisance. In response to the Johnson & Johnson decision, Plaintiffs submitted a Notice of Supplemental Authority and Supplemental Memorandum of Law addressing the decision's impact on their public nuisance claim.
¶7 As to the public nuisance claim, the District Court found that only those Plaintiffs who were survivors of the Massacre, i.e., Lessie Benningfield Randle, Viola Fletcher, and Hughes Van Ellis, Sr., had standing to sue.
[6] The District Court dismissed Plaintiffs' "ongoing" public nuisance claim, which sought relief for the unlawful acts of Defendants in the decades following the massacre. Specifically, the District Court determined that Plaintiffs' claim of an ongoing public nuisance implicated political questions that were not within its purview and that Plaintiffs' requested relief violated the separation of powers doctrine. The District Court also dismissed with prejudice the public nuisance claim against then-named Defendants, Tulsa Development Authority and Tulsa Metropolitan Area Planning Commission, because neither body existed at the time of the Massacre. The District Court also dismissed the only remaining public nuisance claim without prejudice, that of the survivor Plaintiffs stemming from the Massacre itself, finding that Plaintiffs had failed to state a cognizable abatement remedy--but granted Plaintiffs leave to amend their petition.
¶8 In its ruling on Defendants' motions to dismiss Plaintiffs' unjust enrichment claim, the District Court noted that the parties stipulated there were curable defects with the unjust enrichment claim, and pursuant to the parties' joint request, the District Court dismissed the unjust enrichment claim without prejudice and with leave to amend.
¶9 In their Second Amended Petition, Plaintiffs revised their proposed abatement remedy as to their public nuisance claim and made the stipulated changes to their unjust enrichment claim. Defendants renewed their motions to dismiss on largely the same grounds. After the District Court held a hearing on the renewed motions to dismiss, it incorporated its previous findings and dismissed the Second Amended Petition with prejudice. The District Court provided the following reasoning in its dismissal order:
The Court determines Plaintiffs' Second Amended Petition fails to state a justiciable public nuisance claim under Oklahoma law. Plaintiffs' Second Amended Petition fails to allege a legally cognizable abatement remedy. Plaintiffs' Second Amended Petition fails to cure the defect in pleading which the court found to exist and liberally granted leave to amend pursuant to 12 O.S. 2012 §G.
Plaintiffs filed their Petition in Error and accompanying Motion to Retain with this Court. We retained the matter for disposition and held oral argument en banc.

STANDARD OF REVIEW
¶10 We review a district court's order granting a motion to dismiss under a de novo standard. Dani v. Miller, 2016 OK 35, ¶ 10, 374 P.3d 779, 785. Motions to dismiss are intended to test the law that governs a claim, rather than the underlying facts. Id. ¶ 10, 374 P.3d at 785-86. Thus, when evaluating whether a petition was properly dismissed, we take as true all the allegations within the petition, as well as any reasonable inferences that can be drawn therefrom. Id. Motions to dismiss are generally disfavored and should only be granted when there is no set of facts that can be drawn from the petition that would warrant relief. Id. ¶¶ 10-11, 374 P.3d at 785-86.
¶11 When reviewing a dismissal for failure to state a claim upon which relief can be granted pursuant to 12 O.S. § 2012(B)(6) we must determine whether the petition is legally sufficient. Ind. Nat'l Bank v. State Dep't of Human Servs., 1994 OK 98, ¶ 2, 880 P.2d 371, 375. "A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief." Fraizer v. Bryan Mem'l Hosp. Auth., 1989 OK 73, ¶ 13, 775 P.2d 281, 287. We adhere to the standard that "[t]he purpose of a motion to dismiss is to test the law that governs the claim, not the facts. " MeGee v. El Patio, LLC, 2023 OK 14, ¶ 5, 524 P.3d 1283, 1285. Thus, we "must take as true all of the allegations in the challenged pleading together with all reasonable inferences that can be drawn from them." Id. We will only find dismissal appropriate if "there is no cognizable legal theory to support the claim or there are insufficient facts under a cognizable legal theory." Id.
ANALYSIS
¶12 On appeal, Plaintiffs' propositions of error can be summarized as two primary contentions: (1) the District Court erred in dismissing their public nuisance claim for failing to state a legally cognizable abatement remedy; and (2) the District Court erred in dismissing their unjust enrichment claim despite a purported stipulation that the defects in the claim were curable.
[7] 

I. Plaintiffs' Grievances Do Not Fall Within the Scope of Our State's Public Nuisance Statute.

¶13 Plaintiffs' primary contention on appeal regarding the public nuisance claim is that the District Court functionally imposed a heightened pleading standard by requiring Plaintiffs to identify a "legally cognizable abatement remedy."[8] Specifically, Plaintiffs note that Oklahoma is a notice pleading jurisdiction, and under a notice pleading regime, they are not required to identify a theory of recovery. Defendants counter that Plaintiffs must show there is some justiciable remedy in order to adequately state a claim for public nuisance. Defendants also argue that even if Plaintiffs have adequately stated a claim, this Court can and should dismiss the public nuisance claim on other grounds.
¶14 Oklahoma law states that a nuisance exists when the offending party unlawfully does an act, or omits to perform a duty, which act or omission either:
First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or
Second. Offends decency; or
Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or
Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities.
50 O.S. §1. A nuisance is public when it "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." 50 O.S. § 2.
¶15 In Johnson & Johnson we explained in applying Oklahoma's public nuisance statute that over the past one-hundred years we have limited public nuisance liability to defendants "(1) committing crimes constituting a nuisance, or (2) causing physical injury to property or participating in an offensive activity that rendered the property uninhabitable." State ex rel. Att'y Gen. of Okla. v. Johnson & Johnson, 2021 OK 54, ¶ 18, 499 P.3d 719, 724. For instance, in Crushed Stone Co. v. Moore, 1962 OK 65, 369 P.2d 811, we recognized that the operation of a limestone rock quarry constituted a public nuisance, due to the concussive explosions, projectile debris, and dust that filled the air and settled on nearby properties. Id. ¶¶ 5, 12, 369 P.2d at 813, 815-16. Likewise, in State ex rel. Field v. Hess, 1975 OK 123, 540 P.2d 1165, we found that the exhibition, distribution, and sale of obscene material at an adult bookstore in violation of Oklahoma law constituted a public nuisance. Id. ¶ 16, 540 P.2d at 1170-71.
¶16 Like Johnson & Johnson, the present matter is distinguishable from traditional nuisance cases like Crushed Stone and Hess. In Johnson & Johnson, we were asked to address whether the conduct of an opioid manufacturer in marketing and selling prescription opioids constituted a public nuisance. Johnson & Johnson, ¶ 8, 499 P.3d at 723. We acknowledged that the opioid manufacturer's conduct annoyed, injured and endangered the comfort, repose, health, and safety of the public by contributing to the opioid epidemic. Id. ¶ 19, 499 P.3d at 725. Nevertheless, we declined to expand public nuisance liability to cover the opioid manufacturer's conduct because it was not criminal and did not involve property-based conflict. Id. "Applying the nuisance statutes to lawful products as the State requests would create unlimited and unprincipled liability for product manufacturers; this is why our Court has never applied public nuisance law to the manufacturing, marketing, and selling of lawful products." Id.
¶17 Today, the Court is asked to expand its public nuisance liability once more to include the lingering negative economic and social consequences stemming from the unjust, violent, and tragic moments of our history. The legislatively-authorized remedies for a public nuisance are: (1) indictment or information; (2) a civil action; and (3) abatement.[9] Applying these remedies to Plaintiffs' claim, any individuals who could be indicted or held criminally liable for the Massacre have long since passed away. Plaintiffs do not point to any physical injury to property in Greenwood rendering it uninhabitable that could be resolved by way of injunction or other civil remedy. And as the District Court noted, Plaintiffs' proposed abatement remedy does not constitute abatement but rather a series of affirmative policies directed at offsetting or minimizing the aforementioned inequities. The inability of legislatively-authorized public nuisance remedies to redress the harms flowing from the Massacre highlights that Plaintiffs' grievances do not fall within the scope of our State's public nuisance statute.
¶18 Plaintiffs seek abatement to remedy "the blight to property caused by Defendant-Appellees that began with the Massacre and persists to this day."[10] Plaintiffs do not plead any current physical injury to property or allege that any property is currently uninhabitable.[11] Rather, Plaintiffs' public nuisance claim is predicated upon "the blight to property caused by Defendant-Appellees that began with the Massacre and persists to this day."[12] 

¶19 Accepting as true that the Massacre is a continuing blight within all property in the Greenwood community--and that the pall of the Massacre continues to envelop the Greenwood community over one-hundred years later--Plaintiffs' claim does not present a conflict resolvable by way of abatement. And even accepting as true Plaintiffs' claim that the lingering economic and social consequences of the Massacre still, to some extent, endanger the comfort and repose of the Greenwood and North Tulsa communities, those lingering consequences over one-hundred years later, standing alone, do not constitute a public nuisance, as that term has been construed by this Court. The continuing blight alleged within the Greenwood community born out of the Massacre implicates generational-societal inequities that can only be resolved by policymakers--not the courts.

¶20 Today's holding is consistent with our recent public nuisance jurisprudence: expanding public nuisance liability to include lingering social inequities from historical tragedies and injustices runs the risk of creating a new "unlimited and unprincipled"
[13] form of liability wherein both State and non-State actors could be held liable for their predecessors' wrongdoing, in which current actors played no part. To hold otherwise would place Oklahoma courts in the unorthodox position of fashioning remedies for these claims or venturing into the realm of outright policymaking--both of which we decline to do. As we said in Johnson & Johnson, "[t]his Court defers the policy-making to the legislative and executive branches . . . ." Johnson & Johnson, ¶ 39, 449 P.3d at 731.
¶21 Today we hold that relief is not possible under any set of facts that could be established consistent with Plaintiffs' allegations. "When a trial court is considering [its] ruling on a § 2012(B)(6) motion [it] should not ask whether the petition points to an appropriate statute or legal theory, but whether relief is possible under any set of facts that could be established consistent with the allegations." Ind. Nat'l Bank, 1994 OK 98, ¶ 4, 880 P.2d at 375-76. Plaintiffs' grievance with the social and economic inequities created by the Tulsa Race Massacre is legitimate and worthy of merit. However, the law does not permit us to extend the scope of our public nuisance doctrine beyond what the Legislature has authorized to afford Plaintiffs the justice they are seeking. Accordingly, we affirm the District Court's dismissal of the public nuisance claim.
II. The Record Reflects No Evidence of a Stipulation on Defendants' Behalf to Forego Further Motions to Dismiss.
¶22 With respect to their unjust enrichment claim, Plaintiffs allege that Defendants stipulated to the District Court that they would forego any further motions to dismiss the claim if Plaintiffs made certain amendments to the Second Amended Petition. Defendants argue that Plaintiffs mischaracterized the stipulation, specifically that there was never an agreement to forego further motions to dismiss. On review, we find no evidence of a stipulation on Defendants' behalf to forego further motions to dismiss the unjust enrichment claim.
¶23 During the hearing on Defendants' motions to dismiss, City of Tulsa noted that Plaintiffs' unjust enrichment claim sought damages for injuries that occurred beyond the two-year statute of limitations. Plaintiffs acknowledged on the record that it was not their intention to seek remedies for unjust enrichment beyond those permitted by the statute of limitations. When this issue was raised again at a subsequent hearing, the parties announced a plan to strike certain portions of the proposed remedy on the unjust enrichment claim that addressed injuries preceding the two-year statute of limitations. Specifically, counsel for Plaintiffs stated:
Okay. So the parties have agreed with respect to page 69, Paragraph 10 of the Petition, that Plaintiffs will file a Second Amended Petition that strikes the subparagraphs A through N of that paragraph. And that will be the only purpose of the amendment. And then Defendants will rest on their existing Motions to Dismiss with respect to their legal arguments. And there won't be a new round of briefing related to the Second Amended Petition.
[14] 
¶24 Thus, the stipulation on which Plaintiffs rely does not support their contention that Defendants agreed to forego any further motions to dismiss the unjust enrichment claim. Rather, the record reflects that Defendants intended to pursue a dismissal of the unjust enrichment claim, even if the stipulated defects were cured. Even so, Plaintiffs allege that the District Court was wrong to dismiss their unjust enrichment claim because it was sufficiently pled. Defendants counter with a number of purported legal deficiencies in Plaintiffs' unjust enrichment claim, including lack of standing and the availability of adequate remedies at law. 

¶25 Based on the record before us, it is evident that the stipulation referenced by Plaintiffs did not entail an agreement with Defendants to forego further motions to dismiss. The record reflects that Defendants maintained their intention to pursue dismissal of the unjust enrichment claim, notwithstanding any stipulated amendments. Accordingly, we find no evidence of a stipulation on Defendants' behalf to forego further motions to dismiss the unjust enrichment claim.

III. Plaintiffs' Allegations Do Not Support a Claim for the Equitable Doctrine of Unjust Enrichment.
¶26 Our jurisprudence has defined unjust enrichment as "a condition which results from the failure of a party to make restitution in circumstances where it is inequitable, i.e., the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." Harvell v. Goodyear Tire & Rubber Co., 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035. A claim for unjust enrichment is an equitable claim that arises when a plaintiff does not have an adequate remedy at law. Id. A claim for unjust enrichment requires an allegation of some active wrongdoing on the part of the person against whom recovery is sought such as fraud, abuse of confidence, or unconscionable conduct. Easterling v. Ferris, 1982 OK 99, ¶ 10, 651 P.2d 677, 680. We have explained that:
[U]njust enrichment arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss. One is not unjustly enriched...by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution.

City of Tulsa v. Bank of Okla., N.A., 2011 OK 83, ¶ 19, 280 P.3d 314, 319 (quoting McBride v. Bridges, 1950 OK 25, ¶ 8, 215 P.2d 830, 832).
¶27 Despite the elements of unjust enrichment being relatively broad, our early precedents limited its application to contractual and quasi-contractual relationships. Conkling's Estate v. Champlin, 1943 OK 282, ¶¶ 3-4, 141 P.2d 569, 570. We later clarified that the nature of an unjust enrichment claim primarily exists where an exchange or transaction occurs resulting in one party substantially and unjustly benefitting at the expense of another. French Energy, Inc. v. Alexander, 1991 OK 106, ¶ 14, 818 P.2d 1234, 1238.
¶28 In French Energy, Inc. v. Alexander, we addressed a claim for unjust enrichment by a purchaser of an oil and gas lease who purchased mineral interests at a judicial sale. Id. ¶ 1, 818 P.2d at 1235. Shortly after the sale, it was determined that the minerals subject to the lease were held by production from a prior lease, leading the purchaser to seek rescission of the lease and return of the price paid for the lease based on the equitable doctrines of mutual mistake and unjust enrichment. Id. ¶ 4, 818 P.2d at 1236. We noted the contract memorializing the sale purported to convey the right to explore for oil and gas, yet there was no such right to convey. Id. ¶ 14, 818 P.2d at 1238. Despite the lease conveying the right to explore for oil and gas, and there being no such right to convey, the sellers of the lease profited from the money the purchaser paid for the lease. Id. In granting purchaser's request that the contract be rescinded, we held:
We refuse to allow one party to profit by the mistake of another where, as here, both parties can be returned to the position they were in before the transaction. In short, this case is a classic illustration of when, in accordance with general principles of common justice and equity, [the sellers] will be required to do what it is they promised. Since this is not possible in that the mineral rights are subject to a pre-existing lease, we order the contract be rescinded and [the purchaser's] money refunded. 

Id.
¶29 In the case before us, Plaintiffs outlined their unjust enrichment claim as follows:

Plaintiffs and the residents of Greenwood and North Tulsa will reap no direct benefit from the "financial exploitation of their history and part in the Massacre, as in equity and good conscience they should";
[15] 

Defendants are profiting from promoting the Massacre they created "without ensuring that the community and those subjected to the nuisance they created were significantly represented in the decision-making group or are direct beneficiaries of those efforts";[16] 

Defendants are responsible for destruction of the Historic Greenwood District, refuse to take responsibility or compensate for the Massacre, and it would be "grossly inequitable for the Defendants to retain the benefits they receive from marketing Black Wall Street rather than providing those benefits" to Plaintiffs;[17] 

Defendants' retention of the unjust benefits at the expense of Plaintiffs are "exacerbating the pain and trauma of the Survivors and descendants of the Massacre";[18] 

Defendants are using "the names and likeness of survivors and descendants of the Massacre victims to promote tourism and economic development that benefits Defendants while failing to compensate the victims of the Massacre."[19] 

Plaintiffs reiterated at oral argument that they are seeking disgorgement and, through discovery, intend to prove that Defendants unjustly received monies by utilizing the survivors' stories to benefit themselves.

¶30 Plaintiffs' claim that Defendants' fundraising and community development efforts constitute active wrongdoing--considered alone--is insufficient to support a claim of unjust enrichment. Defendants' fundraising and community development efforts--absent fraud, abuse of confidence, or unconscionable conduct--do not amount to a claim of unjust enrichment. Easterling, ¶ 10, 651 P.2d at 680. Though Defendants' promotion of the Massacre as a fundraising effort may be considered unconscionable by Plaintiffs, neither law nor equity prevent Defendants from promoting the Massacre for historical purposes and community improvement. City of Tulsa, ¶ 19, 280 P.3d at 319. As unconscionable as the Massacre was, it is now part of our state's history, and is even codified as a Legislative finding in statute. 74 O.S. § 8000.1. Absent an allegation claiming that Defendants are falsely or fraudulently promising donors that Plaintiffs will share in or benefit from the proceeds of their fundraising efforts, Defendants' conduct itself is not legally unconscionable. Easterling, ¶ 10, 651 P.2d at 680.
¶31 Further, unlike the parties in French Energy, Inc. v. Alexander, there is no contractual or quasi-contractual relationship between Plaintiffs and Defendants, and no exchange or transaction has occurred between these parties. French Energy, Inc., ¶ 14, 818 P.2d at 1238. Defendants never purported to convey to Plaintiffs as direct beneficiaries any donations or profits from fundraising efforts--nor have Defendants held themselves out as acting in concert with Plaintiffs.
¶32 Plaintiffs reason that allowing Defendants to retain any revenue from fundraising would be grossly inequitable given their participation in the Massacre. Accepting as true that Defendants' retention of fundraising revenue is "grossly inequitable,"
[20] our jurisprudence requires that for Plaintiffs' to be entitled to any donations or profits, they must show a contractual or quasi-contractual relationship with Defendants or that Defendants perpetrated fraud, abuse of confidence, or acted unconscionably by guaranteeing donors that Plaintiffs would have a right to receive fundraising benefits. French Energy, Inc., ¶ 14, 818 P.2d at 1238; Easterling, ¶ 10, 651 P.2d at 680.
¶33 Plaintiffs do not claim there is a contractual relationship with Defendants, nor do they allege Defendants perpetrated fraud, abuse of confidence, or acted unconscionably by promising donors that Plaintiffs would benefit from donations or profits raised in the name of the Massacre. Having claimed neither of these elements--of which at least one is necessary to prevail under the doctrine of unjust enrichment--Plaintiffs' unjust enrichment claim fails as a matter of law.
¶34 Plaintiffs suggest the Defendants should be disgorged of their "ill-gotten gains" due to their participation in the Massacre and subsequent misappropriation of Plaintiffs' stories, names, and likenesses.
[21] Yet, the doctrine of unjust enrichment does not support an equitable redistribution of funds donated by third parties absent an allegation of fraud, abuse of confidence, or unconscionable conduct.
¶35 To apply our holding in French Energy, Inc. to the facts before us, Plaintiffs must show there is money in Defendants hands that was paid by or taken from Plaintiffs--not third-party donors. And though we take as true that Plaintiffs' pain and trauma has been exacerbated by the promotion of the Massacre for fundraising purposes,
[22] our jurisprudence does not allow the transfer of funds donated by third parties as a remedy for unjust enrichment absent an allegation of fraud, abuse of confidence, or unconscionable conduct.
¶36 At oral argument, Plaintiffs claimed that the lack of specificity in their allegations could be cured by permitting this matter to proceed to discovery. While Plaintiffs argue that the lack of specificity in their allegations could be rectified through the discovery process, we find today that the flaws in Plaintiffs' unjust enrichment claim extend beyond mere vagueness. Even if additional details were uncovered during discovery to bolster Plaintiffs' allegations, the fundamental shortcomings of their claim remain. Plaintiffs' unjust enrichment claim lacks any allegation that Defendants have perpetrated fraud, abuse of confidence, or have acted unconscionably; there is no claim of a contractual or quasi-contractual relationship between the parties; and there is no claim Plaintiffs were guaranteed a right to the money raised. Moreover, the assertion that Defendants engaged in--or are continuing to engage in--fundraising and community development efforts does not inherently support Plaintiffs' claim absent a clear demonstration of how these efforts should lawfully inure to their benefit. While discovery may shed light on certain factual aspects of the case, it cannot remedy the underlying deficiencies in Plaintiffs' legal argument, which ultimately fails to establish a viable claim for unjust enrichment.
¶37 Plaintiffs submit they intentionally did not make a claim under 12 O.S. § 1449.[23] Rather, Plaintiffs assert that Defendants have been unjustly enriched through the exploitation of the harm caused to Plaintiffs.[24] Plaintiffs' allegations do not support a claim for the unauthorized use of another person's right of publicity under 12 O.S. § 1449, as Plaintiffs do not point to any facts showing the Defendants used Plaintiffs' name or likeness. Without alleging any specific acts of Defendants' unauthorized use of Plaintiffs' names or likenesses, the pleadings are insufficient under the statutory claim of misappropriation of name and likeness to support Plaintiffs' claim.[25] 
¶38 Accepting Plaintiffs' allegations as true and applying general principles of common justice and equity to the facts before us, we decline to extend our unjust enrichment jurisprudence beyond its recognized bounds necessary to encompass Plaintiffs' claim. On review, we hold that Plaintiffs' allegations do not sufficiently support a claim for unjust enrichment, nor do the allegations sufficiently support a claim for the unauthorized use of name and likeness under 12 O.S. § 1449. Accordingly, we affirm the District Court's order dismissing Plaintiffs' unjust enrichment claim.

CONCLUSION
¶39 We affirm the District Court's July 12, 2023 Final Order of Dismissal with Prejudice. With respect to their public nuisance claim, though Plaintiffs' grievances are legitimate, they do not fall within the scope of our State's public nuisance statute. We further hold that Plaintiffs' allegations do not sufficiently support a claim for unjust enrichment, nor do the allegations sufficiently support a claim for the unauthorized use of name and likeness under 12 O.S. § 1449.
MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
TRIAL COURT AFFIRMED.
Kane, C.J., Rowe, V.C.J., Kauger, Winchester, Combs, Gurich, Darby, and Kuehn, JJ., concur.
Edmondson, J., concurs in part; dissents in part.
FOOTNOTES
[1] Plaintiffs incorporated the final report in its entirety in their pleadings. See Second Amended Petition at 2 n.3 (Sep. 2, 2022); see also Tulsa Race Riot: A Report by the Oklahoma Commission to Study the Tulsa Race Riot of 1921 (Feb. 28, 2001) [hereinafter Race Massacre Report], https://www.okhistory.org/research/forms/freport.pdf.
[2] 74 O.S.2021 § 8000.1.
[3] At the time the original Petition was filed, there were nine named Plaintiffs, including Plaintiff Randle who remains a party to the present appeal. The other eight Plaintiffs included descendants and relatives of Tulsa Race Massacre victims and survivors, a church in the Greenwood neighborhood, and a non-profit organization comprised in part of descendants of Massacre survivors. Plaintiffs Fletcher and the Estate of Van Ellis, who remain named in the present appeal, were joined in the First Amended Petition. The other eight Plaintiffs who were named in the original Petition were later omitted from the Second Amended Petition.
[4] Petition, ¶ 112.
[5] At the time the original Petition was filed, there were seven named Defendants, including each of the Defendants presently named in the appeal, as well as the Tulsa Developmental Authority and the Tulsa Metropolitan Area Planning Commission.
[6] Upon the Death of Hughes Van Ellis, Sr., Muriel Watson as Personal Representative was substituted for his estate.
[7] In the Petition in Error, Plaintiffs noted that there is some dispute as to whether the Court's one-page July 7, 2023 Order or its July 12, 2023 Order constitute the final appealable order in this matter. We find that the July 12, 2023 Final Order of Dismissal with Prejudice is the Court's final appealable order. Plaintiffs' propositions of error are the same for both orders.
[8] Plaintiffs' Brief in Chief, p. 21.
[9] The remedies against a public nuisance are:

1. Indictment or information, or;
2. A civil action, or;
3. Abatement.
50 O.S. § 8.
[10] Plaintiffs' Brief in Chief, p. 19.
[11] Specifically, in relation to their abatement request, Plaintiffs pleaded as follows:
4. Following the Massacre, Defendants exacerbated the damage and suffering of the Greenwood residents. Defendants unlawfully detained thousands of Greenwood survivors and enacted unconstitutional laws that deprived Greenwood residents of the reasonable use of their property. From the period immediately after the Massacre until the present day, Defendants actively and unreasonably, unwarrantedly, and/or unlawfully thwarted the community's efforts to rebuild, neglecting the Greenwood and, predominately Black, North Tulsa communities. Instead, Defendants redirected public resources, which should have been used to abate the nuisance surrounding Greenwood, to benefit the overwhelmingly White parts of Tulsa. As a direct result, Plaintiffs and thousands of Black Greenwood and North Tulsa residents and their descendants have experienced and continue to experience insecurity in their lives and property and their sense of comfort, health, and safety has been destroyed. Plaintiffs therefore seek to abate this public nuisance that has continued to plague Tulsa's Black community for over one hundred years.
. . . .
148. The public nuisance, as described above, is continuing, and has resulted in an obstruction of public rights, including, but not limited to, the right not to be placed in harm's way by Defendants' affirmative actions, the right to security in health, the right to access public roads and thoroughfares, and the right to enjoy reasonable use of property as guaranteed under the Oklahoma Constitution.

Plaintiffs' Second Amended Petition, ¶¶ 4, 148.
[12] Plaintiffs' Brief in Chief, p. 19.
[13] State ex rel. Att'y Gen. of Okla. v. Johnson & Johnson, 2021 OK 54, ¶ 19, 499 P.3d 719, 725 ("Applying the nuisance statutes to lawful products as the State requests would create unlimited and unprincipled liability for product manufacturers; this is why our Court has never applied public nuisance law to the manufacturing, marketing, and selling of lawful products.").
[14] ROA, Doc. 50, pp. 83-84 (emphasis added).
[15] Plaintiffs' Omnibus Opposition to Defendants' Second Motions to Dismiss, p. 20.
[16] Plaintiffs' Second Amended Petition, ¶ 153.
[17] Plaintiffs' Second Amended Petition, ¶ 154.
[18] Plaintiffs' Brief in Chief, p. 25; Plaintiffs' Second Amended Petition, ¶ 135.
[19] Plaintiffs' Omnibus Opposition to Defendants' Second Motions to Dismiss, p. 20; Second Amended Petition, ¶¶ 134-140.
[20] Plaintiffs' Second Amended Petition, ¶ 154.
[21] Plaintiffs' Reply Brief, pp. 26-27.
[22] Plaintiffs' Brief in Chief, p. 25.
[23] 12 O.S. § 1449(A) states, in relevant part:

Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof, and any profits from the unauthorized use that are attributable to the use shall be taken into account in computing the actual damages.

[24] Plaintiffs argue it was not their intention to bring a claim under 12 O.S. § 1449 "because this is not a misappropriation claim for the use of victims' and survivors' likeness, it is an unjust enrichment claim based on the acts of exploitation that Defendants have perpetrated and directly financially benefitted." Plaintiffs Omnibus Opposition to Defendants' Second Motions to Dismiss pp. 21-22.
[25] "The meaning and effect of an instrument filed in court depends on its contents and substance rather than on form or title given it by the author." Horizons, Inc. v. Keo Leasing Co., 1984 OK 24, ¶ 4, 681 P.2d 757, 759; "The nature of a pleading filed in a cause is determined by the subject matter thereof, and by the relief the Court is authorized to grant under it, and not by the title given it by the pleader." Amarex, Inc. v. Baker, 1982 OK 155, ¶ 18, 655 P.2d 1040, 1043.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 73, 775 P.2d 281, 60 OBJ 1202, 
Frazier v. Bryan Memorial Hosp. Authority
Discussed

 
1991 OK 106, 818 P.2d 1234, 62 OBJ 3095, 
French Energy, Inc. v. Alexander
Discussed

 
1994 OK 98, 880 P.2d 371, 65 OBJ 2520, 
Indiana Nat. Bank v. State Dept. of Human Services
Discussed at Length

 
1962 OK 65, 369 P.2d 811, 
CRUSHED STONE CO. v. MOORE
Discussed

 
2006 OK 24, 164 P.3d 1028, 
HARVELL v. GOODYEAR TIRE & RUBBER CO.
Discussed

 
2011 OK 83, 280 P.3d 314, 
CITY OF TULSA v. BANK OF OKLAHOMA, N.A.
Discussed

 
1975 OK 123, 540 P.2d 1165, 
STATE EX REL. FIELD v. HESS
Discussed

 
2016 OK 35, 374 P.3d 779, 
DANI v. MILLER
Discussed

 
2021 OK 54, 499 P.3d 719, 
STATE ex rel. ATTORNEY GENERAL OF OKLAHOMA v. JOHNSON & JOHNSON
Discussed at Length

 
2023 OK 14, 524 P.3d 1283, 
MEGEE v. EL PATIO
Discussed

 
1982 OK 99, 651 P.2d 677, 
Easterling v. Ferris
Discussed

 
1982 OK 155, 655 P.2d 1040, 
Amarex, Inc. v. Baker
Discussed

 
1950 OK 25, 215 P.2d 830, 202 Okla. 508, 
McBRIDE v. BRIDGES
Discussed

 
1943 OK 282, 141 P.2d 569, 193 Okla. 79, 
In re CONKLING'S ESTATE
Discussed

 
1984 OK 24, 681 P.2d 757, 
Horizons, Inc. v. Keo Leasing Co.
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 1449, 
Unauthorized Use of Another Person's Right of Publicity
Discussed at Length

 
12 O.S. 2012, 
Defenses and Objections - When and How Presented - By Pleading or Motion
Cited

Title 50. Nuisances

 
Cite
Name
Level

 
50 O.S. 1, 
Nuisance Defined
Cited

 
50 O.S. 2, 
Public Nuisance Defined
Cited

 
50 O.S. 8, 
Three Remedies Against a Public Nuisance
Cited

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 8000.1, 
1921 Tulsa Race Riots
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA